Fabricant, J.
INTRODUCTION
The plaintiff, Rahim Rashad, is an inmate in the custody of the Massachusetts Department of Correction (DOC), currently housed at MCI Norfolk. He filed this action on August 8, 2001, complaining of pat searches conducted on him by a female correction officer, defendant Janice Pina, while he was housed at Old Colony Correctional Center (OCCC). The defendants, Pina and Timothy Hall, the Superintendent of OCCC, moved to dismiss for failure to state a claim on which relief may be granted. After hearing on September 12, 2003, the Court allowed both sides to file supplemental materials. The defendants then filed a “Supplemental Motion to Dismiss, or in the Alternative, for Summary Judgment,” with supporting affidavits and exhibits. The plaintiff has responded with a cross motion for summary judgment. After review of all materials submitted, the Court concludes that the defendants’ motion must be granted, and the plaintiffs cross motion must be denied.
BACKGROUND
The plaintiff, Rahim Rashad,[1] has been an inmate in the custody of the Massachusetts Department of *305 Correction since October of 1992.[2] For some period of time prior to January of 2002, the plaintiff was housed at OCCC, a level five security facility. Defendant Timothy Hall was then and remains superintendent of that institution. Defendant Janice Pina was then and remains an Inner Perimeter Security officer at OCCC.
Pursuant to DOC and OCCC policy, inmates of the facility regularly undergo pat searches by corrections officers. Such searches occur as inmates go to and from meals, work and recreation areas, and other locations, as well as at random. According to the affidavit of defendant Hall, “an inmate can anticipate being pat searched several times each day by multiple correction officers. The purposes of such searches include detection of contraband, escape devices, and stolen property.”
Pursuant to applicable collective bargaining agreements, as well as a 1987 agreement for judgment in a federal court action brought by the Department of Justice alleging sex discrimination in employment, DOC does not assign correction officers by sex.[3] Female officers at OCCC, as at other institutions, perform the full range of tasks of corrections officers, including conducting pat searches of male inmates.
Rashad alleges that he is a devout Muslim, and that his Muslim faith prohibits him from physical contact with women other than close relatives. On December 5, 2000, the plaintiff sent correspondence to OCCC administration, described as “requesting that ‘only’ a male officer conduct a pat-search on you and secondly that the ‘Holy Quran’ not be handled by staff.”[4] This correspondence elicited two responses. The first, by letter dated December 6, 2000, from Deputy Superintendent Lisa Mitchell, informed the plaintiff that “Subsequent to review, it is deemed your request is non-feasible.” The second response, by letter dated December 12, 2000, from Director of Security David Nolan, informed the plaintiff that, because of the need for “consistent security practices for the safety of everyone,” “Staff will conduct pat searches whether male or female of any inmate housed at this facility regardless of their race or creed,” and that “if you are in possession of any item, whether on your person or in your assigned cell or housing unit it can and will be searched if staff deems necessary.”
Notwithstanding these responses, Superintendent Timothy Hall met with the plaintiff regarding his request in March of 2001. Rashad did not at that time refer to any individual female officer by name, and did not allege any harassing or abusive conduct by any individual, but, according to Hall’s affidavit, “merely kept reiterating that he did not wish to be pat searched by any female correction officer at OCCC.” In that meeting Rashad presented to Hall, according to Hall’s affidavit, “a permanent injunction implying that it applied to him.” Hall checked with the DOC legal division, and learned that the injunction Rashad had presented applied only to another inmate, Raheem Rasheed Abubardar, who was not housed at OCCC.
Rashad followed that meeting with a memorandum to Hall dated March 9,2001, reiterating his concern, and again asserting that “an inmate do possess an Court’s order that prohibits female officers from pat-searching a Muslim inmate unless of danger to security or emergency.” He pointed that “there are several male officers present within the halls,” and inquired why those officers could not conduct searches of Muslim inmates.[5]
Rashad next raised the issue in a memorandum dated May 11, 2001, to Director of Security Brenda Lobo.[6] He stated, “I am writing in regards to my religious belief that adheres that a male is not allowed to exhibit any female conduct with a woman that is not his or her spouse. I refer to Raheem Rashaed v. Peter Pepe, et al., that was ordered that Female correction officers shall not conduct ‘pat’ searches of him, except under the following circumstances.” He then recited the exceptions stated in an order entered on January 14, 1998, in the case of Raheem Rasheed Ahubardar v. Peter Pepe and Lori Jolly, Middlesex Civil Action No. 97-2873.
On August 8, 2001, Rashad filed this action, acting pro se. The complaint names Pina and Hall, stating that each “is sued individually and in his/her official capacity.” The complaint invokes jurisdiction under G.L.C. 127, §§88, 89, and 90, c. 12, §§11(I) and (J), c. 231A, and 42 U.S.C. §1983. Although the first paragraph recites that it is “for declaratory judgment, injunctive relief and damages,” the prayer for relief makes no reference to damages, claiming only a declaration, injunction, attorneys fees, and “such other and further relief as this Court might seem just and proper.”[7]
The complaint alleges that the plaintiff notified Hall and Lobo of his request to be searched only by male officers, and of the religious basis for that request. The complaint further alleges that Rashad notified Lobo in May and June 2001 that “Pina was aggressively in her searches of the plaintiff and how the religious matter that plaintiff had in his possession was dropped by defendant Pina, who in turns stepped on all of the material and swiped it with her feet,” and further, that Pina “indicated that she would make his life miserable for five (5) days a week.” After his report to Lobo, the complaint alleges, Pina “quit hasseling the plaintiff ... for a few weeks.” The complaint goes on to allege that on August 3, 2001, “Pina pulled him over and continue the same harassment as previously want to tell her boss that he is harassing him, ‘tell her this too.’ ” The next day, “while going to the chowhall the defendant Pina commenced with the same tactics,” causing Rashad to refuse to eat and return to his unit. Soon thereafter, when inmates were again moving from place to place, “defendant Pina continued the same harassing tactics and had plaintiff empty the contents of his religious documents and pockets. Steadly harassing the plaintiff. . . ‘Defendant Pina, stated now you have something to complain about to my boss.’ ” Pina also said to plaintiff, according to the complaint, “if you were following your religion, as you claim you would not be here now.” Based on these *306 allegations, the complaint seeks a declaration that “the defendants have deprived the Plaintiff of his right to exercise and express his religious beliefs,” and an injunction that “the defendants forthwith to stop the female pat-searching of the plaintiff.”[8]
On August 22, 2001, after having filed his complaint in this case but apparently before having made service,[9] Rashad submitted an inmate grievance form for consideration by the OCCC’s Institutional Grievance Coordinator, pursuant to G.L.c. 127, §38E. His complaint, as set forth on the form, was “constant harassment by Janice Pina (IPS) hassling of Islamic & program related material.” The Institutional Grievance Coordinator, Cliff Lauzon, docketed the complaint on August 25,2001, as grievance no. 01-171, and notified Hall. Hall directed Deputy Superintendent Mitchell to “insure that the matter was promptly investigated.” She assigned Unit Manager Paul Duford to meet with Rashad. Duford did so, and submitted to Hall a memorandum dated September 7, 2001, reporting that Rashad “claims that C.O. Pina harasses by constantly searching him & any items he carries every time she sees him. He claims she indicates that she will continue to do this. He claimed he brought it to Brenda’s attention & it stopped for about 3 weeks but then it started again & continues.” Hall reviewed Duford’s report, and concluded that “Where this is a routine and necessary function of her job as a correction officer, the pat searching of inmates, I found his complaint to have no substance.” Hall reported this conclusion to Lauzon on November 8, 2001. On that same date, Lauzon denied the grievance and gave Rashad written notice of that decision, informing him that “It has been determined that there is no substance to your claim of harassment by c/o Pina against you.”
The inmate grievance procedure afforded Rashad another step; pursuant to 102 C.M.R §491.12, Rashad had the right to appeal to Hall, as superintendent, within ten days of Lauzon’s decision. 'lire grievance form, on which Lauzon’s notice of denial appeared, notified Rashad of that right immediately below Lauzon’s signature. Had Rashad exercised that right, denial of the appeal by Hall would have automatically triggered further review by the Departmental Grievance Coordinator, as designee of the Commissioner, pursuant to 103 C.M.R. §§491.06, 491.13. Rashad did not, however, exercise his right to appeal to Hall, and accordingly the grievance process terminated with Lauzon’s denial.[10]
On January 9, 2002, Rashad was transferred to MCI-Norfolk, a level four medium security facility. He remains there to the present. Pat searches are a routine part of inmates’ daily lives at MCI Norfolk, as at OCCC. MCI Norfolk, like OCCC, has female corrections officers, and assigns them without regard to sex, including to assignments involving pat searches of male inmates. However, according to the affidavit of the Superintendent of the facility, “when an inmate requests to be pat searched by a male officer for religious reasons, his request is accommodated, provided that there is a male officer available at that point. On occasion, the male officer assigned to the exit may be unavailable. If that occurs, the female officer is not required to seek out a male officer but, rather, may perform the pat search herself.” In his time at Norfolk Rashad has not filed any grievance relating to pat searches or other contact with female corrections officers.
Aside from the inmate grievance procedure, the Department provides a mechanism for inmate requests regarding religious accommodations; inmates may submit such requests to the Religious Services Review Committee on a Religious Services Request Form. According to the affidavit of the Department’s Acting Director of Program Services, Rashad has utilized that procedure for certain requests regarding his practice of Islam, but has not done so with respect to the issue of pat-searches by female officers.
DISCUSSION
This Court grants summaiyjudgment where there are no genuine issues of material fact, and the record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of establishing that there is no dispute of material fact on eveiy relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a genuine dispute of material fact for trial either by submitting affirmative evidence negating an essential element of the non-moving party’s case, or by showing that the non-moving parly has no reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue by either of these methods, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. See Pederson v. Time, 404 Mass. 14, 17 (1989). The opposing party may not rest on the allegations of the pleadings, nor may he rely on “bare assertions and conclusions regarding [his own] understandings, beliefs, and assumptions.” Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728 (1989). Mere contradictions of factual allegations, without evidentiary support, are insufficient to raise questions of material fact to defeat a summary judgment motion. See Madsen v. Erwin, 395 Mass. 715, 721 (1985), quoting Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3rd Cir. 1972). The opposing party’s obligation, rather, is to demonstrate the existence of admissible evidence sufficient to meet his burden of proof on the issues raised by the motion.
In deciding motions for summary judgment, the Court may consider pleadings, depositions, answers to interrogatories, admissions on file and affidavits. *307 The Court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility or find facts. See Dawes, 369 Mass, at 553; Mass.R.Civ.P. 56(c); Colley v. Benson, Young & Downs Insurance Agency, Inc., 42 Mass.App.Ct. 527, 528 (1997); see also Kelley v. Rossi, 395 Mass. 659, 663 (1985).
The defendants contend that the plaintiffs complaint must be dismissed on a number of procedural and substantive grounds, including failure to exhaust administrative remedies. Before addressing those grounds, it is necessary to identify the precise nature of the plaintiffs claim. Review of his complaint, memoranda, and exhibits yields two alternative interpretations. First, the claim may be understood as a challenge to the policy of the Department of Correction, or of OCCC, of assigning female corrections officers to roles in which they must pat-search male inmates who object on religious grounds to physical contact with women. This appears to be the way the defendants understand the claim, and the way they understood the administrative grievance. Second, the claim may be understood as alleging that Officer Pina engaged in a campaign of harassment of the plaintiff, involving physical and verbal abuse and desecration of objects sacred to him, in retaliation for his having requested accommodation for his religious practice. These are distinct theories, subject to different procedural and evidentiary requirements. The Court will address them in turn, referring to them, for convenience, as the policy claim and the harassment claim.
The plaintiffs policy claim is, by its nature, an equitable claim. If the claim were found to be meritorious, the proper remedy would be declaratory and injunctive relief. To have any effect, such relief would have to run against persons who have the power to control the policy in issue. Such persons would necessarily be officials of the Department, at a policy making level, in their official capacity. Defendant Pina, as a corrections officer, clearly has no such power; she does not make policy, nor does she have authority to depart from the policies set by her superiors. She is not even free to decline to conduct pat searches of male inmates when her assigned responsibilities require hertodoso. For that reason, she is not a proper defendant with respect to the policy claim, and the complaint fails to state a claim against her on that theory.
Defendant Hall, as superintendent of OCCC, does have authority over policy at OCCC, but not at any other facility ofthe Department of Correction. Hall was therefore aproper defendant, in his official capacity, at the time the complaint was filed, when the plaintiff was housed at OCCC. But the plaintiff is no longer housed at OCCC, having been transferred to Norfolk in January of2002.[11] The question thus arises whether the policy claim against defendant Hall is moot. The plaintiff argues that it is not, because he could be transferred back to OCCC at any time.[12] Indeed he could, and in that sense the dispute is capable of repetition. But nothing before the Court indicates that the issue would tend to evade review, if it arises again. If the plaintiff were transferred back to OCCC, nothing would prevent him from seeking accommodation, by means of either the grievance procedure, or a request to the Religious Services Review Committee, or both. If he were to exhaust those remedies without satisfaction, nothing would prevent him from pursuing the issue in litigation against a properly named defendant. Accordingly, the Court concludes that the policy claim against defendant Hall is moot, and must be dismissed.
The harassment claim raises different issues. The facts presented, considered in the light most favorable to the plaintiff, are sufficient to state a claim. If Pina conducted herself toward the plaintiff as he claims in retaliation for his request for religious accommodation, a factfinder could reasonably conclude that she deprived him of rights protected by both state and federal law, and that she did so by means of threats, intimidation, and coercion, in violation of both the federal and state civil rights acts, 42 U.S.C. §1983 and G.L.c. 12, §§11H, 11I. See Cale v. Johnson, 861 F.2d 943, 949-51 (6th Cir. 1988) (retaliation against prisoner for exercising right to complain of prison policy violates substantive due process); O’Connell v. Chasdi, 400 Mass. 686, 691-94 (1980) (supervisor’s sexual harassment of employee constituted deprivation of right to equal protection by threats, intimidation or coercion); compare Longval v. Commissioner of Correction, 404 Mass. 325, 333 (1989) (“A direct violation of a person’s rights does not by itself involve threats, intimidation or coercion”). Remedies for such violation could include damages against Pina individually, as well as declaratory and injunctive relief.
No such facts appear with respect to Hall, however. The complaint alleges no harassing conduct by Hall, nor does it allege any facts on which Hall could be held liable for Pina’s conduct. It does not allege that Hall directed or encouraged such conduct, or even that he was ever informed of it and failed to act in response. Nor has the plaintiff offered any evidence, by way of affidavit or otherwise, to support any theory of liability on the part of Hall for harassment by Pina. Accordingly, this aspect of the complaint also must be dismissed as against Hall.
What remains then, is the claim against Pina individually for harassment. The Court must next consider the defenses raised as to this claim. Defendants argue that the Court cannot consider this claim because the plaintiff has failed to exhaust his administrative remedies, as required by both state and federal law. That requirement appears in federal law in the Prison Litigation Reform Act (“PLRA”), 42 U.S.C. §1997e(a), which provides in pertinent part: “No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.” See generally Porter v. Nussle, 534 U.S. 516, 524 (2002) (PLRA applies to all inmate suits about prison life, filed under §1983, whether in state or federal court, regardless of the relief sought).
*308 State law imposes a corresponding requirement for claims brought under state law, at General Laws c. 127, §38F, which provides in pertinent part as follows:
An inmate shall not file any claim that may be the subject of a grievance under section 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E; but the court may consider such claim if a final administrative resolution of a grievance filed pursuant to said section 38E has not been decided within 180 days from the date of filing such grievance, or if the inmate can demonstrate to the court that exigent circumstances exists which, if delayed pursuant to the requirements of this section, would jeopardize the life or seriously impair the health of the inmate, or, for actions seeking equitable relief.
The combined effect of these statutes is that the plaintiffs claim against defendant Pina cannot proceed under either the state or the federal civil rights act unless he exhausted his administrative remedies prior to filing suit.[13] The record before the Court establishes that he did not. Prior to suit, the plaintiff took no action under the grievance procedure. Thereafter, he did file a grievance, which was denied.[14] He did not, however, exhaust the grievance procedure by appealing the denial to the Superintendent, so as to trigger review at the Department level. That such review likely would have resulted in denial, as the plaintiff argues and the Departmental Grievance Coordinator acknowledges, does not solve the problem. Both Congress and the Massachusetts Legislature have established exhaustion of administrative remedies as a prerequisite to suit, and the Court is not free to excuse the plaintiffs failure to meet that prerequisite. The wisdom of that rule is apparent in these facts; if Rashad had pursued his grievance to conclusion, according to Ladouceur’s affidavit, he would ultimately have been directed to the Religious Services Review Committee, which might have succeeded in resolving the problem to Rashad’s satisfaction. The harassment claim against defendant Pina must be dismissed.
CONCLUSION AND ORDER
For the reasons stated, the Defendants’ Supplemental Motion to Dismiss Or, in the Alternative, for Summary Judgment is ALLOWED, and the Plaintiffs Cross-Motion for Summary Judgment is DENIED.

 The plaintiffs original name was Larry Graham. The materials before the Court include two court records, one dated May 8, 1990, from Anderson County, Texas, and the other dated October 20, 1993, from Lowndes County, Georgia, both indicating that the plaintiff changed his name to Raheem Rashad.

 The defendants assert in their memorandum that the plaintiffs imprisonment arises from a conviction of rape. As evidence, the defendants supply a copy of an excerpt of grand jury testimony. Although that document is not competent evidence of the conviction, the plaintiff apparently does not contest the nature of the crime for which he is incarcerated. The grand jury testimony indicates that the offense occurred on May 27, 1984, that the victim was the plaintiffs former girlfriend, and that he assaulted her with a knife.

 Nhe one exception to this policy, according to the affidavits submitted, relates to strip searches, which are conducted only by officers of the same sex as the inmate, except in emergencies.

 Neither side has provided a copy of the plaintiffs December 5, 2000, correspondence. The quotation is from the response of Director of Security David Nolan.

 The memorandum says “Why can’t a Muslim inmate be pat-searched by a female officers, since they are visible within the halls at all times.” In context, it seems apparent that the word “female” was an error.

 The record does not indicate whether Lobo had replaced Nolan, or OCCC had two positions with that title.

 At argument, the plaintiff indicated that he sought only declaratory and injunctive relief, and not damages. However, in his memorandum in opposition to the defendant’s supplemental motion, he claims a right to damages for past injuries as a basis to avoid dismissal on mootness grounds.

 In response to the defendants’ initial motion to dismiss, Rashad filed an affidavit attesting to the truth of the allegations of the complaint. On that basis, the Court treats the complaint as if it were verified, for purposes of the summary judgment analysis. In connection with his present motion, Rashad has also submitted affidavits of two fellow inmates attesting in general terms to having observed Pina searching Rashad in an “aggressive” manner. Pina has submitted an affidavit denying that she ever engaged in any aggressive or harassing conduct toward Rashad, that she ever made the statements attributed to her, and that she ever treated Rashad’s religious materials in the manner alleged. A factual dispute thus exists as to whether Pina did the things alleged in the complaint. For purposes of the present motion, the plaintiff is entitled to the benefit of that dispute; the Court accordingly assumes that she did.

 The docket reflects filing of returns of service on November 13, 2001, soon after denial of the grievance.

 The Department Grievance Coordinator, Kristie Ladouceur, states in her affidavit that, if Rashad had appealed to Hall and Hall’s denial had been forwarded to her, she would have denied the appeal and referred Rashad to the Religious Services Review Committee, because “this matter impacts more than one superintendent and would, in my opinion, require review by the Religious Services Review Committee.”

 As indicated supra, Norfolk provides a degree of accommodation to the plaintiff’s objection to physical contact with female officers. The plaintiff has not expressed any dissatisfaction with the accommodation he receives at Norfolk, and has not filed any grievance on the subject at that institution.

 The plaintiff asserts, without offering any evidentiary support, that he will be in DOC custody “until at least 2009.”

 It is apparent that none of the exceptions in G.L.c. 127, §38F apply: the plaintiff makes no claim of a failure to decide on his grievance, or of exigent circumstances jeopardizing his life or health. Nor is the harassment claim one seeking equitable relief; although proof of the claim might warrant a grant of incidental equitable relief, the claim is in the nature of a tort.

 As indicated supra, the grievance as filed failed to alert the Grievance Coordinator, and the Superintendent, to the crux of the harassment claim. Although the grievance used the word “harassment,” it did not provide the details alleged in the complaint, and did not indicate that the harassment was motivated by Rashad’s request for religious accommodation. Similarly, it appears that Rashad left that information out of this interview with Unit Manager Paul Duford, so that Duford’s report to the superintendent presented the grievance as accusing Pina of nothing more than doing her job in accord with the Superintendent’s policies.