DIANA COLLEY *vs.* BENSON, YOUNG & DOWNS INSURANCE AGENCY, INC.

No. 95-P-1533.

Barnstable. December 3, 1996. - April 24, 1997.

Present: PERRETTA, KASS, & JACOBS, JJ.

*Practice, Civil,* Summary judgment, Relief from judgment. *Judgment,* Relief from judgment. *Jurisdiction,* Personal. *Superior Court,* Jurisdiction. *Privileged Communication. Attorney at Law,* Attorney-client relationship. *Due Process of Law,* Notice, Hearing.

In an action under Mass. R. Civ. P. 60(b)(4) for relief from judgment on the ground that the court lacked personal jurisdiction over the party requesting relief and that the ensuing judgment was void, the record presented did not demonstrate that certain attorneys acted on that party's behalf without her authority in circumstances in which she was never properly served with the complaint, and the judge correctly denied the relief requested. [532-535]

There was no error in a judge's denial of relief from judgment, sought under Mass. R. Civ. P. 60(b)(4), for want of subject matter jurisdiction, in an action to reach and apply brought in the Superior Court under G. L. c. 214, § 3(6). [535]

A Superior Court judge correctly denied relief from an allegedly void judgment, sought under Mass. R. Civ. P. 60(b)(4), where nothing in the underlying action warranted a conclusion that the judgment was entered in a manner inconsistent with due process. [536]

There was no abuse of discretion in a Superior Court judge's denying relief from judgment sought under Mass. R. Civ. P. 60(b)(6), on the record presented. [536-537]

CIVIL ACTION commenced in the Superior Court Department on February 14, 1994.

The case was heard by *Gerald F. O'Neill, Jr.,* J, on motions for summary judgment.

*Francis E. Scheele* for the plaintiff.

*Christopher J. Snow* for the defendant.

*George A. Berman, Susan E. Cohen & David P. O'Brien* for Lawson & Weitzen & others, amici curiae, submitted a brief.

PERRETTA, J. In 1987, after Benson, Young & Downs Insurance Agency, Inc. (Benson), made payment on a promissory note which it had guaranteed on behalf of George Colley (George), husband of Diana Colley (Diana), it brought an action against George and Diana seeking to reach and apply George's interest in the marital residence which stood in Diana's name only. Benson was granted judgment by default on April 24, 1992, and an execution on that judgment issued. Benson's many attempts to obtain satisfaction on the judgment prompted Diana, on February 14, 1994, to commence the present action under Mass.R.Civ.P. 60(b)(4) and (6), 365 Mass. 828-829 (1974), in which she alleges that Benson's judgment against her is void for lack of subject matter and personal jurisdiction. On cross motions for summary judgment, the same Superior Court judge who had entered all the orders and judgment in the underlying action again ruled in favor of Benson. We affirm.

1. *An independent action under rule 60(b).* Although relief from judgment is typically sought by motion, rule 60(b) also allows relief to be sought by independent action: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court." 365 Mass. at 829. Because Diana sought relief from Benson's judgment against her by commencing an independent action with a complaint upon which she and Benson then sought summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974), we need consider the appropriate standard of review to be applied before taking up her claims on appeal.

If we examine Diana's appeal in terms of its procedural posture, it is from a grant of summary judgment in Benson's favor. " 'The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as matter of law. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). See *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 626 (1989); *Leavitt* v. *Mizner*, 404 Mass. 81, 88 (1989); *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989). We may consider any ground supporting the judgment. *Champagne* v. *Commissioner of Correction*, 395 Mass. 382, 386 (1985).' *Au-*

gat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). '[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case.' Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991)." Judson v. Essex Agric. & Technical Inst., 418 Mass. 159, 162 (1994).

It is, however, unnecessary to consider whether summary judgment is appropriate in an independent action under rule 60(b). Choosing to place substance over form, we view Diana's request for relief as having been made by motion. See Weldon v. United States, 70 F.3d 1, 4-5 (2d Cir. 1995), quoting from 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil § 2868, at 405 (2d ed. 1995) ("A party is not bound by the label he puts on his papers. A motion may be treated as an independent action or vice versa as is appropriate"). There was no circumstance which required Diana to seek relief under rule 60(b)(4) and (6) by an independent action rather than by motion, and our standard of review should not be controlled by the label she placed on her pleading. See Reporters' Notes to Mass.R.Civ.P. 60(b), Mass. Ann. Laws, Rules of Civil Procedure, at 587-588 (Law Co-op. 1982). Additionally, in filing cross motions for summary judgment, the parties stated that there were no facts in dispute.

The issue to be determined on an appeal from the denial of a motion brought under rule 60(b)(4) is simply whether the record shows that the judgment from which relief is sought is void. See Smith & Zobel, Massachusetts Rules Practice § 60.11 (1977) ("As soon as a party, even the party who originally obtained it, satisfies the court that the judgment was void, the court must vacate it"); 12 Moore's Federal Practice § 60.44[3] (3d ed. 1997) ("[O]n a Rule 60[b][4] motion based upon a lack of personal jurisdiction, the moving party must show not only a lack of personal jurisdiction, but also that he or she did not waive the lack of jurisdiction and voluntarily submit to the court's jurisdiction," citing to Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21, 25-26 [1st Cir. 1992]).

We look to the pleadings, affidavits, and exhibits to

determine whether they show that the judgment in the underlying action is void and whether the judge erred in denying Diana's request for relief.

2. *The underlying action.* Pertinent papers in the underlying action to reach and apply establish certain facts. Proper service of process was made upon George but not Diana. George retained the law firm then known as Lawson & Wayne, and Lawson & Wayne filed an appearance on behalf of George and Diana. That firm entered into a stipulation that Diana would temporarily refrain from disposing of any real estate standing in her name alone. It filed an answer for George and Diana setting out nine affirmative defenses, none of which spoke to a lack of jurisdiction over Diana or the subject matter of the action, and it submitted a memorandum of law in opposition to Benson's request for a preliminary injunction against Diana's disposition of her property. About five years later, a default judgment entered against George and Diana. After Lawson & Wayne unsuccessfully sought to have the default vacated, damages were assessed and judgment entered. When Benson sought to satisfy the judgment through a sheriff's sale of the marital residence, Diana brought this action under rule 60(b).

3. *The present action.* In her affidavit, Diana states that although she knew that George was being sued by Benson and represented by Lawson & Wayne, she had no knowledge that she also was involved. As recited by her:

> "Generally, George . . . did not discuss business with me because most of the time it would result in a violent argument. At some point when I did ask George what was going on with his lawsuit, an argument ensued. He yelled at me to call the lawyer myself which I did. I recall a very brief, general discussion about the procedure. I didn't really understand anything that was said, but I wasn't worried because the lawyer said everything was moving along and being taken care of for George. At no time did I know that I was personally involved or that my property was involved. I was never served any papers in this lawsuit and none were ever left at my home or business. No one ever notified me or George to appear in Court for a Judgment. If I had known that I was involved, I would have immediately retained counsel

to represent my interests rather than to let it get to this point. However, I never retained counsel or pay [*sic*] any money to an attorney to represent me, nor did I ever authorize any attorney to represent me in this matter."

Although there are three affidavits from George in the record before us, the facts therein related pertain to Diana's lack of knowledge of the business transaction which gave rise to his debt and promissory note. None of the affidavits tells whether Diana had knowledge of the lawsuit or her representation by Lawson & Wayne.[1]

In one affidavit, however, George does inform that after receiving "horrendous bills" from Lawson & Wayne, he requested his "papers from them which [he] took to Attorney [John] Stephenson so he could look into matters for me." Neither a motion for leave to withdraw from Lawson & Wayne nor an appearance by Mr. Stephenson is reflected on the docket of the underlying action.

After Benson's attorney, Mr. Christopher Snow, sent Lawson & Wayne a copy of his motion for entry of a default judgment and an assessment of damages, Lawson & Wayne filed a motion to remove the default. According to an affidavit submitted with that motion, Lawson & Wayne had returned the "defendants' " file on September 29, 1989, as requested by George, by certified mail addressed to him and directed to the marital residence. When, on July 31, 1991, Lawson & Wayne received notice to appear in court on August 29, 1991, they "forwarded the notice to defendant believing that Defendants had retained successor counsel." The motion to remove the default was denied on March 19, 1992, for the failure to satisfy the standard set out in *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426 (1979). A default judgment entered against George and Diana on April 24, 1992, and a writ of attachment in the amount of the judgment issued on November 9, 1992.

We return to Diana's affidavit. As related by her, the first time she had knowledge that she too was involved in Benson's underlying action was on January 11, 1993, when she received notice from the registry of deeds that an execution document had been registered on her title to the marital

---

[1]George does state in an affidavit that *he* never told Diana that she was involved because he was of the view that she was not responsible for the debt and that the "lawyers would straighten everything out."

home.[2] Upon receipt of this notice, Diana immediately telephoned Mr. Stephenson who advised her that "George's former attorney defaulted by not appearing in Court for George and that this matter would be taken care of." Four days later, Diana received a second notice and again called Mr. Stephenson who told her that "he was working on it." Next, Diana received notice that a sheriff's sale of her property was to be advertised with a specified sale date of March 10, 1994. Once more, Mr. Stephenson assured Diana that "he would get in touch with Christopher Snow . . . and that this property would not be advertised."

Mr. Snow, on behalf of Benson, responded to Diana's affidavit with one of his own. Mr. Snow relates that on February 17, 1994, three days after Diana filed the present complaint, he spoke with Mr. Richard Weitzen of Lawson & Weitzen (formerly Lawson & Wayne) and attempted to ascertain whether Lawson & Wayne had been authorized to act on Diana's behalf in the action brought by Benson. Mr. Weitzen would only state that the "public record speaks for itself." Mr. Snow further stated in his affidavit that Mr. Weitzen "implied that he would say nothing more regarding this matter unless or until judicially compelled to do so."[3]

4. *Discussion.* "A judgment is void if the court from which it issues lacked jurisdiction over the parties, lacked jurisdiction over the subject matter, or failed to provide due process of law. *United States* v. *119.67 Acres of Land,* 663 F.2d 1328, 1331 (5th Cir. 1981). See 11 C.A. Wright & Miller, Federal Practice and Procedure § 2862, at 198-200 (1973)." *Harris* v. *Sannella,* 400 Mass. 392, 395 (1987).

---

[2] Diana's affidavit states that she received this notice on January 11, 1992, the date appearing on the notice itself. Because the judgment did not enter until April, 1992, and the writ did not issue until November, 1992, the date on the notice is obviously incorrect and should read January 11, 1993. In any event, the import of Diana's affidavit is that the notice, be it 1992 or 1993, was the first inkling she had that she also was involved in the underlying action.

[3] Mr. Snow also related that subsequent to the judgment in the underlying action, Mr. Stephenson had called him and stated that he represented both George and Diana. Mr. Snow described how, pursuant to Mr. Stephenson's requests, he had postponed the sheriff's sale twelve times. However, the fact that Mr. Stephenson represented both George and Diana subsequent to the judgment is not relevant to the question whether Diana's representation by Lawson & Wayne was unauthorized and, therefore, the judgment void.

*a. Personal jurisdiction over Diana.* A judge has no discretion to deny a request for relief from judgment brought under rule 60(b)(4), *supra*, where it is shown that the judgment was entered by a court against a person over whom the court lacked personal jurisdiction. See *Bowers* v. *Board of Appeals of Marshfield*, 16 Mass. App. Ct. 29, 31 (1983), and cases and authorities therein cited. Although it is undisputed that proper service of process was not made upon Diana, it does not follow from that fact alone that the court lacked personal jurisdiction over her in the underlying action. As provided by Mass.R.Civ.P. 12(h)(1), 365 Mass. 757 (1974), the defense of lack of personal jurisdiction can be waived through nonassertion. If the filings made by Lawson & Wayne on Diana's behalf in the action to reach and apply were authorized by her, they would constitute a waiver of the defense. See *Precision Etchings & Findings* v. *LGP Gem, Ltd.*, 953 F.2d at 25-26.

Characterizing her affidavit as an uncontroverted showing that she neither knew of her involvement in the underlying action nor authorized any attorney to act on her behalf, Diana argues that the Superior Court judge in the present action was bound to accept her averments, conclude that the judgment was void, and grant her relief under rule 60(b)(4). See *Farley* v. *Sprague*, 374 Mass. 419 (1978).

Although the court did conclude in *Farley* that a judge in a civil case is bound to accept an affidavit where the truth or accuracy of its contents goes unchallenged, that holding cannot be read to require a judge to accept an affidavit as uncontroverted where it is shown that the lack of challenge is due to the affiant's ability to control access to the information which could provide a refutation of the averments and which is not otherwise available. Cf. *Mello* v. *Hingham Mut. Fire Ins. Co.*, 421 Mass. 333, 338 (1995), and cases therein cited which stand for the proposition that a "person may not seek to obtain a benefit or to turn the legal process to his advantage while claiming the privilege as a way of escaping from obligations and conditions that are normally incident to the claim he makes."

We do not regard Diana's affidavit as uncontroverted in the sense of being unchallenged. As stated by Mr. Snow in his affidavit, he attempted to acquire information to refute Diana's claim that Lawson & Wayne acted on her behalf

without her authority. Relying upon the "public record," Lawson & Wayne refused to divulge any information until judicially compelled to do so. We think that, in the circumstances presented, the statements of Lawson & Wayne reasonably could be construed as a reference to the attorney-client privilege. See *Commonwealth* v. *O'Brien*, 377 Mass. 772, 775 (1979) ("attorney-client privilege may extend to preliminary communications looking toward representation even if representation is never undertaken").[4] Nor could Mr. Snow reasonably hope to obtain any information from George which might enable him to challenge Diana's affidavit. Cf. *Gallagher* v. *Goldstein*, 402 Mass. 457, 459 (1988) ("[t]estimony as to the contents of a private conversation is inadmissible even if both spouses desire the evidence to be admitted").

There is nothing in the record which even remotely suggests that Benson acted in bad faith in proceeding with its action against Diana in reliance upon Lawson & Wayne's appearance and pleadings on her behalf. When Diana first moved for summary judgment, she did so on the sole basis of her claim of lack of subject matter jurisdiction. It was not until after that motion was denied and Benson sought summary judgment that Diana, having had the benefit of Mr.

---

[4] Lawson & Wayne could view themselves as not necessarily free to make statements in defense of their actions in respect to Diana unless released from the privilege by her. See S.J.C. Rule 3:07, Canon 4, DR 4-101(C)(4), as appearing in 382 Mass. 778 (1981). Although not involved in the proceedings in the Superior Court, Lawson & Wayne did seek leave to file a brief on this appeal as an amicus curiae, see Mass.R.A.P. 17, 365 Mass. 864 (1974), on the stated basis that Diana had commenced a malpractice action against them and should she prevail on this appeal, the malpractice action would fail for want of damages. That motion was allowed by a single justice of this court and, as might be expected, the brief of the amicus curiae takes the position that because Diana's affidavit is uncontroverted, she must be granted relief from the judgment. We have looked to the papers filed in the malpractice action to learn the nature of the claims and defenses asserted. See *Brookline* v. *Goldstein*, 388 Mass. 443, 447 n.5 (1983). We learn from Diana's complaint, which was filed within days of the order granting Benson's motion for summary judgment in the present action, that she alleges malpractice on the basis of unauthorized representation as well as a conflict of interest in the dual representation of herself and George. She also seeks treble damages pursuant to G. L. c. 93A, § 9. The malpractice defendants obtained a stay of that action from a judge of the Superior Court pending the outcome of this appeal, and they have not yet answered to the complaint.

Snow's affidavit for over ten months, chose to file a cross motion seeking summary judgment on facts which were precluded from dispute without some action by her.

It was Diana who was seeking to show that Lawson & Wayne did not represent her and that their actions were unauthorized. It would have been a simple matter for her to file some statement releasing Lawson & Wayne from any privilege which they might be asserting on her behalf or to request an evidentiary hearing on that issue pursuant to Mass.R. Civ.P. 43(e), 365 Mass. 807 (1974). Cf. *United States Trust Co. of N.Y.* v. *Herriott,* 10 Mass. App. Ct. 313, 318 (1980), discussing the procedures to be followed by a party relying upon a claim of privilege in summary judgment proceedings.

We conclude that because, on all the materials presented, it has not been shown that representation of Diana was unauthorized, the Superior Court judge correctly denied her relief on her claim of lack of personal jurisdiction.

*b. Subject matter jurisdiction.* Concurrent jurisdiction over actions to reach and apply is conferred upon the Supreme Judicial Court and the Superior Court by G. L. c. 214, § 3(6). In its underlying action to reach and apply, Benson alleged that Diana held bare legal title to the marital residence for the benefit of George who contributed to the purchase price and monthly carrying charges. Diana denied these allegations in her answer.

Putting aside the issue of whether Diana's answer was authorized, her present claim appears to be that the Superior Court lacked subject matter jurisdiction over the dispute because George has no recognizable legal interest in the marital residence. In denying Diana relief from the judgment on the basis of this claim, the Superior Court judge relied upon *Harris* v. *Sannella,* 400 Mass. 392, 395 (1987), wherein the court, quoting from *Lubben* v. *Selective Serv. Sys.,* 453 F.2d 645, 649 (1st Cir. 1972), noted the distinction between a total want of jurisdiction and an error in the exercise of jurisdiction. As it was not shown that there was no arguable jurisdictional basis for the Superior Court judgment in the underlying action, it was not error to deny her relief on her claim of lack of subject matter jurisdiction. See *Harris* v. *Sannella,* 400 Mass. at 396, citing and quoting from *Nemaizer* v. *Baker,* 793 F.2d 58, 65 (2d Cir. 1986); *O'Malley* v. *O'Malley,* 419 Mass. 377, 382 (1995).

*c. Due process.* "[A] judgment may be void for purposes of rule 60(b)(4) if entered in a manner inconsistent with due process." *Orner* v. *Shalala,* 30 F.3d 1307, 1310 (10th Cir. 1994). In entering judgment against Diana in the underlying action, the Superior Court did nothing inconsistent with due process. At the time of the entry of that judgment, the Superior Court had before it an appearance and pleadings on behalf of Diana and a motion to remove the default judgment accompanied by an affidavit which was found to provide insufficient basis for granting the requested relief. As earlier noted, there was nothing in the pleadings or the affidavit which would warrant a conclusion that Diana had not been given notice of the litigation, or that she had been denied the opportunity to be heard, or that the Superior Court arguably lacked subject matter jurisdiction over the dispute.

*d. Rule 60 (b)(6).* It is also Diana's claim that the Superior Court judge abused his discretion in denying her relief under rule 60(b)(6). In support of this claim, Diana repeats the arguments she advanced in seeking relief under rule 60(b)(4) and adds that she has an absolute defense to the underlying action, that is, George has no interest in her property.

There is nothing in the record before us which would lead to the conclusion that Diana's defense is absolute rather than meritorious. For all that does appear in the record, her defense would turn upon issues of credibility. Notwithstanding any merit in her defense to the underlying action, the record shows all Diana's claims for relief in the present action directly relate to the issue of whether she authorized Lawson & Wayne to act on her behalf. Although we have recognized that the denial of a rule 60(b) motion based upon a claim of a lawyer's negligence could increase court congestion "by replacing the dismissed action with a new action for malpractice," *Berube* v. *McKesson Wine & Spirits Co.,* 7 Mass. App. Ct. at 431 n.10, it must be remembered that Diana in effect precluded consideration of her claim of unauthorized representation by Lawson & Wayne while filing a cross motion for summary judgment.

Additionally, although Diana received notice on January 11, 1993, that action was being taken against her property, she did not commence the present action until a little over a year later. In the interim, she communicated with Mr. Stephenson who thereafter held himself out to Mr. Snow as

representing both George and Diana.[5] In reliance upon Mr. Stephenson's representations, Mr. Snow postponed the sheriff's sale twelve times. See note 3, *supra*. He also successfully sought relief from an automatic stay obtained in the Bankruptcy Court by Diana without prior notice to him. See 11 U.S.C. § 362 (1994). In the meantime, Benson's 1992 judgment, which does not appear to have been attacked or paid by George, has gone unsatisfied. On the undisputed facts presented, we see no abuse of discretion or other error of law in the denial of Diana's request for relief under rule 60(b)(6). See *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. at 430-431.

*Judgment affirmed.*

---

[5]Diana did not name Mr. Stephenson as a defendant in her malpractice complaint. Rather, the docket entries reflect that Mr. Stephenson was brought into the action as a third-party defendant pursuant to a motion brought by the defendants under Mass.R.Civ.P. 14(a), as amended, 385 Mass. 1211 (1982).