## CURLY CUSTOMS, INC. *vs.* PIONEER FINANCIAL.

No. 03-P-411.

Middlesex. February 12, 2004. - September 22, 2004.

Present: LENK, COWIN, & GREEN, JJ.

*Attorney at Law,* Lien. *Practice, Civil,* Appeal, Notice of appeal, Reconsideration, Default. *Judgment,* Default.

This court concluded that the appeal of the plaintiff (the former client of an attorney who had obtained a default judgment against the plaintiff) was properly before this court, where the provisions of Mass.R.A.P. 4(a), as amended, 430 Mass. 1603 (1999), regarding the timing of a notice of appeal did not apply to the plaintiff's filing of a motion pursuant to Mass.R. Civ.P. 60(b), 365 Mass. 828 (1974), to set aside the default and the default judgment, or to a motion for reconsideration of the denial of its rule 60(b) motion. [96-97]

Where an attorney who formerly represented the plaintiff in a particular action filed a motion for an attorney's lien pursuant to G. L. c. 221, § 50, in the underlying action, in which the plaintiff did not prevail, the judge erred in subsequently entering a default judgment in favor of the attorney, where the attorney in these circumstances was not permitted under the rules of civil procedure to seek a default judgment by means of a motion rather than a complaint; therefore, the judgment was void. [97-101]

CIVIL ACTION commenced in the Superior Court Department on November 30, 1994.

Entry of a default judgment was ordered by *Nonnie S. Burnes,* J., and an emergency motion to set aside the default and the default judgment and a motion for reconsideration were considered by her.

*Jack Bryan Little* for the plaintiff.

*Gordon N. Schultz,* pro se.

COWIN, J. We consider a proceeding pursuant to G. L. c. 221, § 50, the attorney's lien statute, wherein a default judgment resulted in a substantial recovery for an attorney notwithstanding that his former client had not prevailed in the underlying

litigation, thus receiving no proceeds to which the attorney's lien could attach. The former client's motion to set aside the default judgment, see Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), was denied by a judge of the Superior Court, who also declined to reconsider the decision, and the former client appealed from each order. We conclude that the relatively simple concept of the attorney's lien became hopelessly confused while the case was subjected to various procedural oddities, resulting in a judgment completely at odds with the purpose of G. L. c. 221, § 50. Accordingly, we reverse.

1. *Relevant facts and prior proceedings.* Except as indicated otherwise, the events of the case are not disputed. We relate them in some detail so that the propositions advanced by the parties will be clear. In 1994, the plaintiff, Curly Customs, Inc., commenced an action against Pioneer Financial, which eventually was succeeded by Fleet Bank. The plaintiff was represented in the litigation by attorney Gordon N. Schultz, who worked on this and other matters for the plaintiff until March, 2001. At that time, with Schultz pressing for payment of legal bills long in arrears, the plaintiff discharged Schultz, and attorney Jack Bryan Little entered an appearance for the plaintiff in the case against Fleet Bank.

On July 17, 2001, Schultz filed, in the underlying case, a notice of an attorney's lien in accordance with G. L. c. 221, § 50.[1] On August 17, 2001, he followed this by filing a "Verified Motion to Determine Amount of and Enforce Attorney's Lien Pursuant to G. L. c. 221, § 50, and Request for Injunctive

---

[1]General Laws c. 221, § 50, inserted by St. 1945, c. 397, § 1, provides:

"From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom. Upon request of the client or of the attorney, the court in which the proceeding is pending or, if the proceeding is not pending in a court, the superior court, may determine and enforce the lien; provided, that the provisions of this sentence shall not apply to any case where the method of the determination of attorneys' fees is otherwise

Relief" (the § 50 motion).[2] The § 50 motion therefore sought both action against the plaintiff, Schultz's former client, with regard to the attorney's lien (asking specifically for $33,722.79) and a restraint against the defendant Fleet Bank precluding the bank from making any payment that might ultimately come due to the plaintiff as a result of the underlying litigation without recognition of the amount, if any, determined to be due Schultz in accordance with the attorney's lien. Schultz thereupon obtained ex parte a temporary restraining order returnable August 23, 2001, and served the same with a summons on Fleet Bank. At the same time, he forwarded by facsimile transmission to attorney Little, his successor as the plaintiff's counsel, copies of the summons and temporary restraining order, together with notice that a preliminary injunction hearing would be held on August 23, 2001.

Little's office informed Schultz that he would not accept service for the plaintiff, and requested that the preliminary injunction hearing be postponed to accommodate Little, who was out of town. Schultz agreed, arranged for a hearing to be conducted on September 4, 2001, obtained a new summons, and faxed to Little a copy thereof, with a copy of the § 50 motion. Little attended the preliminary injunction hearing, which was actually conducted on September 5, 2001. On that occasion, the judge entered a preliminary injunction against Fleet as requested. She took no action on the portion of the motion that sought a determination and enforcement of the attorney's lien because the underlying case between the plaintiff and Fleet Bank had yet to be tried.

That trial was conducted in September, 2001, with an outcome adverse to the plaintiff. Judgment in favor of Fleet Bank entered November 21, 2001. On January 4, 2002, Schultz filed a request pursuant to Mass.R.Civ.P. 55(a), 365 Mass. 822 (1974), that the plaintiff be defaulted for failure to respond to the § 50 motion. This request was not served either on the

---

expressly provided by statute."

Neither party contends that the portion of the statute regarding determination and enforcement is inapplicable.

[2] The § 50 motion was returned by the clerk's office for failure to comply with Rule 9A of the Rules of the Superior Court (1998), then was refiled on August 22, 2001.

plaintiff or its counsel.[3] On February 6, 2002, Schultz filed a request for a default judgment with an affidavit. See Mass.R. Civ.P. 55(b)(1), as amended, 423 Mass. 1402 (1996) (entry of default judgment where claim for sum certain). Again, Schultz made no service on the plaintiff or its counsel, apparently relying on the absence of a requirement of service if the motion for default judgment is filed under rule 55(b)(1). The court, apparently acting under Mass.R.Civ.P. 55(b)(2), as amended, 423 Mass. 1402 (1996) (proceedings for default judgment where claim not certain), scheduled a hearing on the request for April 11, 2002. Schultz asserts that he received a clerk's notice of the hearing dated April 1, 2002. The plaintiff states that neither it nor its counsel received notice, and consequently Little did not attend.

A hearing was conducted, and on May 28, 2002, a second judge ordered that, the plaintiff having recovered no proceeds from Fleet Bank to which an attorney's lien could attach, Schultz's motion to determine and enforce the lien was to be denied, and the preliminary injunction against Fleet Bank vacated. At the same time, the judge ordered the entry of a default judgment in favor of Schultz against the plaintiff. The parties disagree whether notice of the order for a default judgment was given to the plaintiff. A default judgment in the amount of $40,655.99 entered on August 8, 2002.[4] The plaintiff filed no notice of appeal from the default judgment, perhaps because it was unaware that a judgment had entered.

Execution on the default judgment issued on September 10, 2002. When this was followed by a seizure of land owned by the plaintiff in Boxford, the plaintiff, on September 19, 2002, filed an "emergency motion" under Mass.R.Civ.P. 60(b) to set aside both the default and the default judgment, asserting

[3]Schultz asserts that a clerk endorsed the case papers with a notice of default and that the default was docketed. The court docket, however, does not indicate that a default actually entered.

[4]For reasons that are unclear on this record, judgment did not enter immediately following the judge's orders of May 28, 2002. The judge issued a further order on July 10, 2002, it again being unclear whether the plaintiff received notice, and judgment entered thereafter. Schultz asserts that the difference in the amount sought in the § 50 motion ($33,722.79) and the amount awarded in the default judgment ($40,655.99) is attributable to the accrual of interest. See Mass.R.Civ.P. 54(c), 365 Mass. 821 (1974).

principally that there had been a lack of service of process and no notice, as required by rule 55(b)(2), of the motion for default judgment.[5] The judge denied the motion on December 12, 2002, on the ground that the plaintiff had not established any grounds for rule 60(b) relief. On January 7, 2003, the plaintiff moved for reconsideration. While that motion was pending, the plaintiff filed a notice of appeal from the order denying its rule 60(b) motion. The judge subsequently declined to reconsider and an order to that effect was entered on January 22, 2003. On January 31, 2003, the plaintiff filed a notice of appeal from the denial of its motion for reconsideration.

2. *Viability of the appeal.* Schultz asserts that the plaintiff's appeals are not properly before this court, citing the provision of Mass.R.A.P. 4(a), as amended, 430 Mass. 1603 (1999):

> "If a timely motion under the Massachusetts Rules of Civil Procedure is filed in the lower court by any party . . . (3) under Rule 59 to alter or amend a judgment . . . , the time for appeal for all parties shall run from the entry of the order . . . granting or denying [the] motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above."

Characterizing the plaintiff's motion for reconsideration of the judge's denial of its rule 60(b) motion as a motion to alter or amend judgment under rule 59, Schultz argues that the filing of the request for reconsideration had the effect of nullifying the subsequently filed (on January 8, 2003) notice of appeal. Accordingly, the argument continues, the plaintiff's failure to refile the notice of appeal after the judge's decision on the motion for reconsideration left the case without a timely filed notice and thus no authority in this court to consider the merits.[6]

The short answer to Schultz's contention is that a motion for

---

[5]The motion was refiled on October 7, 2002, after compliance with Rule 9A of the Rules of the Superior Court.

[6]We agree that the notice of appeal from the denial of the motion for reconsideration would not have been sufficient by itself to preserve appellate rights with respect to the denial of the rule 60(b) motion.

reconsideration is not the equivalent of a rule 59 motion (or any of the other motions enumerated in Mass.R.A.P. 4[a]). Rule 4(a) does not refer to motions for reconsideration, a well-known practice to which there is now all too frequent resort. See Rule 9D of the Rules of the Superior Court (1990). Had the framers of rule 4(a) desired to include motions for reconsideration within that category of motions that would nullify a notice of appeal, they presumably would have said so expressly. The question appears to have been laid to rest by *Selby Assocs.* v. *Boston Redev. Authy.*, 27 Mass. App. Ct. 1188, 1189-1190 (1989).

3. *The § 50 motion.* What took place in this proceeding may become clearer with an understanding of the role of the attorney's lien under G. L. c. 221, § 50. The lien in favor of the attorney is created by operation of the statute when the attorney, with the client's authorization, asserts a claim in one of the proceedings to which the statute applies. However, the lien is limited to the "client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom." Thus, no lien exists in general with respect to amounts that may be owed by the client pursuant to the contract with the attorney. Rather, the lien exists only on proceeds obtained by the client in the underlying proceeding; consequently, if there are no such proceeds, there is no lien. See *Torphy* v. *Reder*, 357 Mass. 153, 155-156 (1970), *S.C.*, 360 Mass. 869 (1971). If, in such circumstances, the attorney is to recover from the client for services rendered in the unsuccessful case, that recovery must be the result, not of the § 50 lien, but of an independent action in contract.

In the present case, Schultz and the second judge appear to have conflated the two concepts. Schultz combined a motion to determine the lien with a motion for injunctive relief against Fleet Bank. His effort to obtain a restraint against Fleet Bank, the defendant in the underlying case, was timely and the first judge granted the requested relief. The motion to determine the lien was premature. The underlying case had not been tried; therefore neither party had yet prevailed, and there were no

proceeds to which the lien could attach.[7] Accordingly, the judge properly took no action on this portion of Schultz's request.

The problem resurfaced following the plaintiff's unsuccessful effort in the underlying case against Fleet Bank. It was at this time that Schultz, having received no response from the plaintiff to his earlier motion to determine the lien, initiated default proceedings with respect to the motion. When the matter came to the attention of the second judge, she recognized that no proceeds to which the lien could attach existed, and correctly denied the § 50 motion and dissolved the restraint against Fleet Bank. Simultaneously, acting on what Schultz represented as a default situation, she ordered the entry of a default judgment in his favor and this, in our view, was error.

General Laws c. 221, § 50, provides that upon the "request" of the attorney or the client, the court may determine and enforce the lien. This "request" is normally made in the underlying litigation. Thus, it is most frequently made by motion, see Mass.R.Civ.P. 7(b)(1), 365 Mass. 749 (1974) ("An application to the court for an order shall be by motion"), although it may, where the underlying action is not pending in a court, be determined and enforced in the Superior Court, presumably in a separate action initiated by a complaint. Here, the request for redetermination of the lien was filed while the underlying case was pending, and Schultz himself denominated the request a "motion."

The distinction between a motion and a complaint for the purposes of determination and enforcement of an attorney's lien becomes important where, as here, a party seeks to avail himself of the default provisions of the rules of civil procedure. Mass.R. Civ.P. 55(a) authorizes the entry of a default by the clerk "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." The "failure-to-plead" provision refers to any "pleading" required in response to a claim for relief. See Smith

---

[7]We also fail to see how the lien could have been "determined" at this stage. With the case yet to be tried, the amount that the client would ultimately owe the attorney could not then be calculated. Nor was a court determination that a lien existed required; the lien is created by operation of a statute. See *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 248 (1993).

& Zobel, Rules Practice § 55.2 (1977 & Supp. 2004). "Pleadings" are those papers enumerated in Mass.R.Civ.P. 7(a), as amended, 385 Mass. 1215 (1982), and do not include responses to motions. The words "otherwise defend" refer to filings such as a motion to dismiss that defer the requirement to plead to the claim for relief. See *Bass* v. *Hoagland*, 172 F.2d 205, 210 (5th Cir.), cert. denied, 338 U.S. 816 (1949). Thus, we conclude that rule 55 is applicable to complaints, counterclaims, cross claims or third-party complaints, see Smith & Zobel, Rules Practice, *supra*, and is not implicated by motion practice. Schultz's argument that the § 50 motion is akin to a complaint for this purpose because it sets forth a claim for relief and a demand for judgment, see Mass.R.Civ.P. 8(a), 365 Mass. 749 (1974), is unconvincing; if this were so, a motion for sanctions under Mass.R.Civ.P. 37(b), as amended, 423 Mass. 1406 (1996), for example, could qualify as a complaint.

Furthermore, we find untenable Schultz's proposition that the § 50 motion is a complaint, but that the complaint did not have to be served in the normal fashion. For a default to enter, service of process is a prerequisite. See *Lally* v. *Dorchester Div. of the Dist. Ct. Dept.*, 26 Mass. App. Ct. 724, 727 (1988) (removal of a default required where a defect in service caused a failure to answer and a delay in seeking removal of the default). Here, there was no service on the plaintiff of the § 50 motion. The plaintiff's successor counsel expressly informed Schultz that he would not accept service. No summons to the plaintiff (as opposed to the summons to Fleet Bank) ever issued. While the plaintiff may have waived the ground of failure to make service by virtue of its counsel's participation at the preliminary injunction hearing apparently without preserving the issue, the case does not turn on such a waiver given our conclusion that the § 50 motion was not a pleading that could generate a default under rule 55(a).

We should note, however, that, even if the § 50 motion qualified as a complaint, and even if Schultz were entitled to the entry of a default under rule 55(a), his failure to serve written notice of his application for judgment at least seven days prior to the hearing precluded action by the court thereon. See Mass. R.Civ.P. 55(b)(2). There is an indication that the clerk's office

sent notice of the hearing, but that the notice did not state that a default judgment was contemplated.[8] Schultz was not entitled to proceed under rule 55(b)(1) because this is not a case in which the claim is "for a sum certain or for a sum which can by computation be made certain." "[A] complaint does not achieve 'sum certain' status simply by requesting a specific amount." See Smith & Zobel, Rules Practice, *supra* at § 55.4 (using as an example a claim for a reasonable attorney's fee alleging a precise amount). We observe that it is Schultz himself who insists that formal service on the plaintiff of the § 50 motion was unnecessary because Little had appeared at the preliminary injunction hearing. Knowing that there was an appearance of adverse counsel in the § 50 proceeding, not to mention in the underlying case against Fleet Bank, Schultz was obligated to notify counsel of his effort to obtain judgment.

We turn then to consideration of the validity of the default judgment and the ensuing denial of the motion to vacate that judgment if we treat the § 50 motion not as a complaint, but as a motion. As we have stated, Schultz's effort to recover his fees emerged in the form of a motion seeking both a determination and enforcement of the attorney's lien, see G. L. c. 221, § 50, and a restraint against Fleet Bank. The judge acted favorably to Schultz on the request for preliminary injunctive relief, and took no action with regard to determination of the lien. Four months later, without notice to the plaintiff or its counsel, Schultz requested a default, and one month later, and again without notice, requested a default judgment.

Schultz could not properly proceed in this fashion on the § 50 motion. That motion had already been considered by a motion judge who declined to act on the lien determination portion because it was premature. We recognize that motion practice in the Superior Court requires the filing of oppositions to most contested motions, see Rule 9A(a)(2) of the Rules of the Superior Court (1998), and that, in the absence of an opposition, the judge may allow the motion based solely on the moving party's papers. However, that bridge was crossed at the hearing, where, notwithstanding the absence of a written op-

---

[8]The notice announced: "Motion/Hearing: post-judgment" and "Hearing on Attorneys Lien."

position, the judge plainly acted within her discretion in declining to make a determination regarding the lien. That did not simply leave the motion pending to be acted on at a subsequent date on a default basis. If Schultz subsequently desired that there be action on the motion, it was incumbent on him to refile it, thereby giving the plaintiff an opportunity to oppose, or otherwise inform the plaintiff that he would seek further action on what had already been filed, thus also giving the plaintiff an opportunity to submit its position to the court. Had Schultz taken these steps, it is safe to assume that the plaintiff would have made known to the court that it had not prevailed in the underlying case against Fleet Bank and that the attorney's lien was consequently a dead issue.

Because the judgment entered August 8, 2002, was the product of a wholly inapplicable default procedure, we conclude that the judgment is void. A judgment is void if the court rendering it lacked jurisdiction over the subject matter or parties, or failed to provide due process of law. See *Colley* v. *Benson, Young & Downs Ins. Agency, Inc.*, 42 Mass. App. Ct. 527, 532 (1997). Here, due process was assuredly lacking where a judgment by default entered in a proceeding not legally susceptible to a default and with at best questionable notice to the affected party. If the default judgment was void, the judge was required to grant relief from it. See Mass.R.Civ.P. 60(b)(4); *O'Dea* v. *J.A.L., Inc.*, 30 Mass. App. Ct. 449, 456 n.13 (1991); *Colley* v. *Benson, Young & Downs Ins. Agency, Inc.*, *supra* at 529, citing Smith & Zobel, Rules Practice § 60.11 (1977). Other factors, such as the timing of the motion for relief or available defenses to the claim, cannot be considered. Because the void character of the default judgment required relief, we need not consider whether denial of the plaintiff's rule 60(b) motion might have constituted an abuse of discretion for other reasons, although we observe that a judgment enforcing an attorney's lien where there are no proceeds to which the lien could attach would seem to be an appropriate candidate for rule 60(b) consideration.[9,10]

---

[9]Our disposition of the case makes it unnecessary to consider the plaintiff's argument that the default judgment entered in an amount in excess of what Schultz sought, thereby violating Mass.R.Civ.P. 54(c).

[10]We trust that the outcome of this case will not be construed as an endorse-

4. *Conclusion.* The order denying the plaintiff's motion for relief from judgment under Mass.R.Civ.P. 60(b) is reversed and a new order is to enter in Superior Court allowing that motion and vacating the default judgment in Schultz's favor.

*So ordered.*

---

ment of the plaintiff's passive reactions to Schultz's efforts to enforce an attorney's lien. It seems, at a minimum, that the clerk's notice that a hearing on an attorney's lien would be conducted on April 11, 2002, might have alerted the plaintiff that something was happening that might not be in its interest, and an appearance by counsel on that occasion could have eliminated the ensuing complexities (including the necessity of this appeal).