## PHILIP BENINATI vs. THERESA BENINATI.

Middlesex.  May 21, 1984. — September 12, 1984.

Present: ARMSTRONG, KASS, & WARNER, JJ.

*Practice, Civil,* Conduct of judge, Continuance. *Divorce and Separation,* Separate trials of cross complaints, Division of property.

In the circumstances, the judge in a divorce case did not abuse his discretion in ordering the case to trial immediately following a pretrial hearing, despite a claim by the wife's counsel that incomplete discovery made him unable to represent his client adequately. [533-535]

It was within the authority of a probate court judge to order trial of a husband's complaint for divorce grounded on fault, even though at the time a complaint based on irretrievable breakdown of marriage, filed by the wife some six months before the husband's complaint, was not ripe for trial as the twelve-month waiting period provided by G. L. c. 208, § 1B, had not yet expired. [535-536]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on June 9, 1983.

The case was heard by *Ginsburg, J.*

*Gerald D. McLellan (Ellen S. Zack* with him) for the defendant.

*David H. Lee* for the plaintiff.

KASS, J. Although the full flavor of the lawyer-judge confrontation which provoked this appeal is best savored from the unabridged record of the proceedings below, a proper concern for concision moves us to summarize.

The libretto begins with a complaint for divorce filed March 23, 1983, by Theresa Beninati (the wife) alleging irretrievable breakdown of the marriage and requesting a divorce in accordance with G. L. c. 208, § 1B. There followed a temporary order for support of the wife, a request for production of documents by the wife, her motion for leave to file in excess of thirty interrogatories, her notice of deposition, and her request

for admission of certain facts. On June 8, 1983, Philip Beninati (the husband), represented as of that date by new counsel, filed a cross-action alleging cruel and abusive treatment. Shortly thereafter, on June 13th, the husband made his first response to the request for production of documents.

There were further maneuvers. The husband moved to modify a temporary order of support and marked that motion for hearing in Concord on June 15, 1983. The wife augmented her resistance to that motion with a motion for the allowance of counsel fees and also marked that for hearing on June 15th. Upon conclusion of the June 15th hearing, the probate judge issued a "Pre-trial Notice and Order" which was mailed to counsel and received by counsel for the wife on June 17, 1983. For purposes of what follows, and the principal issue in this case, the third from the last paragraph is significant, and we quote it in its entirety: "At the conclusion of such pre-trial conference, an appropriate order will be entered reflecting the action taken at such conference; and the case is subject to immediate trial *on that day*" (emphasis original).

According to counsel for the wife, the three months between the pretrial order and the date set for pretrial proceedings *or trial* were an exercise in frustration. The husband failed to make available diverse documents sought from him for discovery. On August 10, 1983, the wife served notice on the husband that his deposition was to be taken on September 15, 1983, only twenty-four hours prior to the date scheduled for pretrial proceedings and possible trial. On September 13th, the wife moved for sanctions against the husband because of his failure to comply with an order of court dated August 10, 1983, for the production of documents.

When the parties appeared before the probate judge on September 16th, the first order of business on the record was the wife's motion for sanctions.[1] Counsel for the parties had completed a round of argument on that matter when the collision mentioned at the outset of this opinion occurred. It is a fair

[1] It appears from the briefs that a pretrial conference aimed at achieving a property settlement between the parties came to an impasse before the proceedings began to be recorded.

summary of the events of that day that the probate judge formed an opinion that the discovery wrangles constituted fencing between counsel and that, if the case went forward for trial on the merits, he could form a better view whether the husband was holding back useful documents and in other respects "stonewalling", as the wife's counsel charged. The judge said that he would weigh the issues of inadequate discovery raised by the motion for sanctions as the evidence developed and would protect the rights of the wife in that regard. "What time do you suggest for trial your Honor?" wife's counsel asked. The judge replied, "We'll start now, Mr. McClellan." There ensued the following dialogue.

MR. McCLELLAN: "No, sir. I'm not going to start trial now or in a half hour. I refuse to go forward, your Honor. I will not go forward."

THE COURT: "Let me point out that the notice that goes out to you states that the case is subject to trial. You were informed of that when the case came on."

MR. McCLELLAN: "May I be heard, your Honor?"

THE COURT: "No. The case is going on. That's it."

       *    *    *

MR. McCLELLAN: "Your honor, I'm not going to proceed. I, respectfully, am not going to proceed and I would like to be heard."

THE COURT: The cross action will be dismissed. You had a trial notice. You can't decide you're not going to proceed, Mr. McClellan. Your case will be dismissed with prejudice. That's your option. You know that. You are not running the list . . . ."

Counsel for the husband then indicated his readiness to proceed with the husband's action.

MR. McCLELLAN:     "Will your Honor allow me to make a statement on the record?"

THE COURT:         "Afterwards. You are ordered to proceed. You made your statement. You are ordered to proceed."

MR. McCLELLAN:     "I'm not going to participate in this trial if, your Honor, please."

THE COURT:         "You are ordered to proceed."

MR. McCLELLAN:     "I respectfully want to inform your Honor that I am not going to participate in this trial."

Counsel for the husband then placed in evidence the husband's case for divorce on grounds of cruel and abusive treatment, including financial information.

At the conclusion of the husband's case, the probate judge afforded the wife's counsel an opportunity to cross-examine the husband, which he declined. It was a Friday. At that juncture the judge adjourned the session to the following Monday and invited the wife and her counsel to reconsider their position.

At the reconvened session, Mr. McClellan stated for the record, upon the judge's invitation so to do, that in view of the inadequate (as he viewed it) response of the husband to discovery, he could not adequately represent his client and that he could not conscientiously participate in the trial with the case in that posture and that state of unpreparedness.

By the following Wednesday, the judge had become aware that the wife's action under G. L. c. 208, § 1B, had not been ripe for trial because, under the statute, there could be no hearing earlier than twelve months after the filing of the complaint. Accordingly, the judge said that he would not, as he had earlier indicated, dismiss the wife's action. The judge did, however, enter a judgment of divorce nisi in the husband's action which provided for custody of the minor children, visitation, unallocated alimony of $400 per week to the wife,

and made other property dispositions, including a lump sum payment of $30,000 to the wife. The wife's appeal followed.

1. *The insistence on an immediate trial.* It is the wife's position that the judge abused his discretion in ordering to trial, in accordance with the judge's prearranged schedule, a case in which the wife had not been able to complete discovery to which she was entitled. The trial judge, the wife argues in her brief, "has far exceeded his authority," acted dictatorially, and "in a fit of pique."

Although "a show of evanescent irritation — a modicum of quick temper . . . must be allowed even judges," *Offutt* v. *United States,* 348 U.S. 11, 17 (1954), it is the duty of a judge to "be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity . . . ." Canon 3(A)(3) of the Code of Judicial Conduct, S.J.C. Rule 3:09, as appearing in 382 Mass. 809 (1981). Judicial discretion implies the "absence of arbitrary determination, capricious disposition, or whimsical thinking." *Davis* v. *Boston Elev. Ry.,* 235 Mass. 482, 496 (1920). The phrase imports "the exercise of discriminating judgment within the bounds of reason." *Ibid.*

One might wish that the judge had afforded wife's counsel more opportunity to spell out what was missing in the way of documents sought and why they were important. In the same spirit of criticism we observe that a curt "no" to a request by counsel to be heard is seldom justified. Counsel has the right and the duty to state for the record the nature of an objection or the reason for a position and, unless counsel has been verbose or contumacious, ought not to be summarily silenced.[2] Not just the dictates of Canon 3, but common sense, suggest the virtue of a willing ear; the judge, after all, may learn something. Listening is an important aspect of a judge's job. Wife's counsel had not been prolix and was not rehashing old ground. Although counsel was somewhat impertinent in the manner in which, at the outset, he flatly refused to start trial, his demeanor — so

---

[2] But see Superior Court Rule 8, as amended, effective September 1, 1980, which permits counsel to state the precise grounds of an objection, but precludes further argument or discussion, unless called for by the court.

far as we may glean it from the written record — was not contumacious and a measure of patience on the part of the tribunal about hearing counsel's reasons would have been the wiser course.

Those reflections aside, we are firmly of opinion that the judge did not abuse his discretion. He did not act arbitrarily or whimsically. His mind was very much at work. He saw the discovery controversy as posturing for bargaining purposes and a morass from which trial might extricate the parties. He gave evidence of an intent, if he were wrong on that score, to suspend trial, and let further discovery proceed. The judge is not without experience and his management of the discovery issues is entitled to weight. *Noble* v. *Mead-Morrison Mfg. Co.,* 237 Mass. 5, 16 (1921). *Mowat* v. *DeLuca,* 330 Mass. 711, 712 (1953). *Bishop* v. *Klein,* 380 Mass. 285, 288 (1980). 8 Wright & Miller, Federal Practice and Procedure § 2205 (2d ed. 1970).

Above all, the salient fact is that the parties were advised on June 17th that the case was subject to immediate trial on September 16th. By scheduling an appointment to examine the husband's documents on September 9th and taking his deposition on September 15th, wife's counsel contributed to his own disability and the judge could take that into consideration. At the least there was an obligation to inform the court by a timely motion for a continuance that the case was not ready for trial — and why. Mass.R.Dom.Rel.P. 40(b) (1975).

Whether a case shall be continued or proceed to trial is within the sound discretion of the judge. *Noble* v. *Mead-Morrison Mfg. Co.,* 237 Mass. at 16. *Commonwealth* v. *Festo,* 251 Mass. 275, 277-278 (1925). *Leonard* v. *Strong,* 2 Mass. App. Ct. 467, 469 (1974). *Dennis* v. *Austin,* 4 Mass. App. Ct. 856 (1976). Contrast *Ackroyd's Case,* 340 Mass. 214, 218-219 (1960), in which an administrative agency refused a continuance although counsel was actively engaged in a trial that day in the Superior Court and there was no history of dilatory behavior. In the case at bar, wife's counsel was present, professionally competent, and familiar with the case. He was perfectly able to try it subject to his objections about the inadequacy of the discovery permitted him and the judge's assur-

ance of protection in that regard. In his brief, wife's counsel mocks what he considers the trial judge's obsessive concern with the trial list. The orderly management of the trial list is a legitimate concern of a judge and, while not necessarily a determinative consideration, ought not to be belittled. See *Castellucci* v. *United States Fid. & Guar. Co.,* 372 Mass. 288, 292 (1977). Cf. *Beit* v. *Probate and Family Court Dept.,* 385 Mass. 854, 858-860 (1982).

Moreover, the judge gave wife's counsel the weekend to think over the position he had taken, to cross-examine the husband the following Monday, to put in a case for the wife, and to state for the record at length why he was not in a position to proceed. Over-all, the tenor of those proceedings indicates the exercise of discriminating judgment within the bounds of reason.

2. *The separate trial of the husband's action.* Although filed earlier than her husband's, the wife's complaint, based on irretrievable breakdown of the marriage, invoked the procedures of G. L. c. 208, § 1B, as amended through St. 1981, c. 447, which authorizes a hearing "[n]o earlier than twelve months after the filing of the complaint."[3] As we have observed, and as the probate judge timely recognized, he was without jurisdiction on September 16, 1983, to hear the § 1B complaint which had been filed March 23, 1983, i.e., about six months earlier. Without citation of authority, the wife insists that the judge was also unable to hear the husband's complaint (based on fault) so long as the wife's complaint was not yet ripe. In effect, the wife objects, the cross complaint grounded on fault has been allowed to preempt the original no-fault complaint. Indeed, that may be the result, but we see nothing in G. L. c. 208, or in logic, which renders that result contrary to law.

---

[3] Section 1B of c. 208 differs from § 1A in that only one party, the plaintiff, alleges irretrievable breakdown of the marriage. In proceedings under § 1A, as amended by St. 1977, c. 531, § 1, the parties agree the marriage has irretrievably broken down and must accompany the complaint with a sworn affidavit that the breakdown exists and "a notarized separation agreement executed by the parties." G. L. c. 208, § 1A. See Freedman, ABC's of Massachusetts Divorce and Procedure, 27 Boston Bar J. (No. 10) 17 (Nov. 1983) and Boston Bar J. (No. 1) 21 (Jan./Feb. 1984).

The policy that mandates a cooling-off period in irretrievable breakdown, i.e., no-fault cases, does not apply to fault actions brought under G. L. c. 208, § 1. See *Davisson* v. *Davisson,* 12 Mass. App. Ct. 420, 423 (1981). As a general proposition, it is the duty of the judge to grant a divorce to a complainant who has proven grounds. *Ibid.,* and cases cited. In the instant case the parties do not dispute that grounds for divorce existed. The controversy was over property, one which the court will, in the main, resolve without "fine moral judgments on the relative fault of the spouses." *Ibid.* See also *Singer.* v. *Singer,* 8 Mass. App. Ct. 113, 120 (1979). Under Mass.R.Dom.Rel.P. 42 (1975), it was open to the judge, in his discretion, to consolidate the actions or to separate them. As long as the Probate judge had become conversant with the case, it could be said to have been "conducive to expedition and economy," Mass. R.Dom.Rel.P. 42(b), to order a separate trial. At all events, we are at loss to understand what substantial rights of the wife would be affected by the trial of the husband's action and the grant of a divorce on his grounds. Should the husband's action be dismissed before the expiration of the nisi period, the wife's action can still be brought forward. See *Mailer* v. *Mailer,* 387 Mass. 401, 404-405 (1982); *Davisson* v. *Davisson,* 12 Mass. App. Ct. at 424. If the divorce judgment becomes absolute, the wife's action becomes academic.

3. *Findings.* We have reviewed the judge's findings. They cover the topics prescribed by G. L. c. 208, § 34, and are not internally inconsistent as the wife suggests. We have no reason to disturb them. See *Bianco* v. *Bianco,* 371 Mass. 420, 422-423 (1976); *Rice* v. *Rice,* 372 Mass. 398, 401-402 (1977). Cf. *Putnam* v. *Putnam,* 7 Mass. App. Ct. 672, 673-675 (1979). The factual basis for those findings was not so sketchy as the wife now claims. The judge's task of property division was somewhat simplified by the circumstances that the marriage had been short-lived, two years and four months.

*Judgment affirmed.*