Per Curiam.
Bay Avary Associates, LLC, a Massachusetts limited liability company engaged in commercial and residential real estate development, was *26 selected by the Town of Sudbury from a group of competitive bidders to build the Frost Farm Village Condominiums (“Frost Farm”), a 44-unit condominium complex for moderate-income senior citizens. Bay Avary and the Town executed a ground lease of the Frost Farm site in July, 2001, and construction began thereafter. The project was plagued by successive legal and construction obstacles and resulting delays. Even after occupancy permits were issued, a number of unit owners complained about a host of post-construction problems ranging in severity from serious basement flooding to mismatched kitchen cabinet doors. The appendix on this appeal prepared by plaintiff-appellant Mark Reznik (“Reznik”) contains more than 60 pages of copies or duplicate copies of Sudbury newspaper articles, transcripts of Reznik’s electronic mail (“e-mail”) correspondence with a local reporter, and selected pages of pleadings filed by subcontractors or other Frost Farm residents in lawsuits unrelated to this one. Those materials underscore the climate of hostility between some residents and the Frost Farm developers, but they are not probative of Reznik’s far more straightforward claims.[2]
While Reznik’s amended complaint of December 16, 2004,[3] excoriates the defendants for allegedly utilizing Frost Farm as a “golden opportunity” for “making money on elderly people” through extortion, “coercion, threats, blackmail, ill faith and scam,” Reznik’s lawsuit has little to do with the legitimate grievances of a few of his Frost Farm neighbors. Reznik’s complaint instead seeks an award of damages for interest on a 2001 pre-construction deposit he paid upon the execution of, and as required by, the purchase agreement for his Frost Farm condominium unit. The deposit was paid to and held by Bay Avary, not even named by Reznik as a party to this suit, and no interest on the deposit was contemplated in the purchase agreement. Yet Reznik alleges that he is entitled to interest on his deposit because the defendants intentionally misrepresented his unit’s occupancy date at the time the deposit was paid and deliberately delayed construction completion thereafter. However, neither the defendants, nor Bay Avary, could have orchestrated the series of construction setbacks which apparently occurred.[4]
Reznik also seeks recovery of the cost of a full basement in his unit, which was ordered and paid for pursuant to a purchase agreement attachment for unit extras or upgrades and “finishes” signed by Reznik’s wife, Helen, and *27 defendant Avary, R.T.G., Inc. (“RTG”).[5] Reznik failed in his attempt to negotiate a waiver of the basement cost by RTG prior to the Rezniks’ purchase of the unit, and now seeks to recover his payment for the full basement the Rezniks ordered and RTG constructed by charging that the defendants compelled him to order the upgrade by extortion, coercion, duress and unfair and deceptive practices in violation of G.L.c. 93A.
The actual contract signed by the Rezniks and concrete information about the progression of the Frost Farm project appear not in Reznik’s complaint, but in materials filed by the defendants in support of their Mass. R. Civ. R, Rule 12(b)(6), motion. Reznik has appealed, inter alia, the allowance of both the defendants’ dismissal motion and motion for monetary sanctions against him for commencing a frivolous, vexatious suit.
While the defendants’ eagerness to terminate Reznik’s harassment (see discussion, infra) is understandable, their efforts to do so fell short of the full procedural compliance necessary for a judgment in their favor at this initial litigation stage.
1. Mass. R. Civ. E, Rule 12(b) (6), Motion to Dismiss. Defendant Richard T. Garaffo (“Garaffo”) was served on January 10, 2005. He thus had until Monday, January 31, 2005, either to serve his answer, Mass. R. Civ R, Rule 12(a), or to serve a Mass. R. Civ R, Rule 12(b) motion, which would have tolled the time for filing a responsive pleading. Garaffo mailed his Rule 12(b) (6) motion to the trial court on January 31, 2005. The motion was received and docketed, and thus filed, on February 2, 2005. Mass. R. Civ. R, Rule 77(c). See also Barrett v. Lynn Ladder & Scaffolding Co., 1994 Mass. App. Div. 217, 218. Further, the motion was not effectively served by January 31, 2005. While service, unlike filing, is complete upon mailing, Mass. R. Civ. R, Rule 5(b), Richardson v. Foodmaster Supermarkets, Inc., 1998 Mass. App. Div. 49, 51, Garaffo did not mail the dismissal motion. He instead forwarded it on January 31, 2005 by Federal Express overnight delivery. No signature was required. A Federal Express tracking order evidences that the motion was in fact delivered to Reznik’s front door on February 1, 2005. However, such delivery did not satisfy Rule 5(b) requirements, which provide that service by delivery to a person like Reznik, who has no office, is accomplished by “leaving [the motion] at his dwelling or usual place of abode with some person of suitable age and discretion then residing therein.” While the trial court could have properly concluded that Reznik’s explanations for his *28 alleged non-receipt of the delivered motion were less than credible,[6] the record does not permit the determination that Garaffo effectively served his Rule 12(b) (6) motion by the January 31, 2005 responsive pleading deadline.
Conversely, the Rule 12(b) (6) motion was not untimely as filed by defendant RTG because Reznik elected not to serve RTG with process. In the absence of service, the Rule 12(a) twenty-day period for RTG’s filing of a responsible pleading never began to run.[7] See Curly Customs, Inc. v. Pioneer Financial, 62 Mass. App. Ct. 92 (2004). Again, however, delivery of the motion did not comply with Rule 5(b).
Moreover, the defendants’ motion was not limited to the inadequacies of the complaint itself, but was predicated on significant additional material outside of the pleadings, including affidavits. See Orion Ins. Co. v. Shenker, 23 Mass. App. Ct. 754, 757 (1987). In such a case, a Rule 12 (b) (6) motion may be properly converted *29 to one for a Mass. R. Civ. R, Rule 56, summary judgment "with notice to the opposing party and an opportunity to present additional responsive material. White v. Peabody Constr. Co., 386 Mass. 121, 127 (1982). While Reznik continued to file all manner of additional matters, relevant and otherwise, in support of other motions pending contemporaneously with the defendants’ dismissal motion, he filed nothing substantive in opposition to that motion. Compare The Stop & Shop Cos. v. Fisher, 387 Mass. 889, 892 (1983) (“A party may be held to have constructive notice that the court is treating a Rule 12(b) (6) motion as a motion for summary judgment when it has, itself, submitted extra-pleading material”); Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43 n.4 (2004) (conversion of Rule 12(b) (6) motion unnecessary where plaintiff had notice of additional materials and relied on them in framing his complaint). There is no indication in the record that Reznik was notified of any Rule 56 conversion of the defendants’ dismissal motion, and the trial court specifically entered its order pursuant to Rule 12 (b) (6). Under these circumstances, the allowance of the defendants’ motion must be reviewed on the basis of Rule 12(b) (6) principles. Orion Ins. Co. PLC. v. Shenker, supra at 757-758.
A complaint “should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support” thereof. Brum v. Dartmouth, 44 Mass. App. Ct. 318, 321 (1998). While the defendants are correct in their contention that complaint “counts described as being for ‘extortion’ and for ‘coercion and duress’ do not state facts supporting any recognized civil cause of action in this Commonwealth,” Leventhal v. Dockser, 361 Mass. 894 (1972), Reznik’s complaint was not, strictly for Rule 12 (b) (6) purposes, limited to the specific relief or theory of recovery set forth therein.[8] Fabiano v. Boston Redevelop. Auth., 49 Mass. App. Ct. 66, 71 (2000). Because all allegations in his complaint must be accepted as true for Rule 12(b) (6) review, Berkowitz v. President & Fellows of Harvard College, 58 Mass. App. Ct. 262, 270 (2003), and because a motion under that rule tests nothing more than whether a “bare silhouette of a cause of action” has been sketched, Coolidge Bk. & Tr. Co. v. First Ipswich Co., 9 Mass. App. Ct. 369, 371 (1980), Reznik’s complaint must be deemed marginally sufficient to advance a very rough outline of misrepresentation claims.[9]
For the foregoing reasons, the allowance of the defendants’ dismissal motion is reversed.[10]
*30 2. Motion for Sanctions. It is probable that, with appropriate, detailed affidavits and factually specific documentary evidence, the defendants may well succeed in pushing this action “over the summary judgment cliff’ when it is returned to the trial court. Wrightson v. Spaulding, 20 Mass. App. Ct. 70, 72 n.2 (1985). However, as the complaint is sufficient at this early procedural juncture to surmount the albeit extremely “minimal hurdle” of a Rule 12(b) (6) challenge, Bell v. Mazza, 394 Mass. 176, 184 (1985), the determination that the action was frivolous was premature. See U.S. Funding, Inc. of America v. Bank of Boston Corp., 28 Mass. App. Ct. 404, 408-409 (1990).[11] The allowance of the defendants’ motion for sanctions is reversed.
We enter that order fully cognizant of the validity of the defendants’ contentions that Reznik was largely motivated in commencing this action by his personal animus towards the defendants, an irrelevant sentiment improperly reiterated throughout his filings in this case. It is also clear that Reznik appears to find expression for that sentiment in any procedural maneuver, however frivolous, that will increase the defendants’ attorney’s fees and litigation costs and thus redound to their financial detriment.[12] Even beyond those considerations, the defendants make a compelling request for some relief from Reznik’s harassment. For a general description of his outrageous conduct, the defendants point to Reznik v. Friswell, 2003 Mass. App. Div. 43, wherein we characterized Reznik’s trial court filings in that case as “increasingly sarcastic, offensive and inappropriate, liberally laced with groundless vilifications of the personal character and professional integrity of trial court judges, FrisweU’s counsel and, eventually, even Friswell herself.” Despite a prior warning in that case from Friswell’s attorney to refrain from any direct contact with his client, Reznik admitted that he sent mail and made numerous telephone calls to Friswell’s home and place of business.[13] The elderly defendant, then in ill health, was distressed and frightened by Reznik’s actions and the trial court dismissed his suit as a sanction for his misconduct. We vacated that dismissal because no prior court order had been issued against Reznik to refrain from the harassing conduct in question. There was, however, no question of the misconduct.
Reznik has expanded the scope of his misconduct in this case to include not just individual defendant Garaffo and his attorney, but also their family members. While there is not a scintilla of evidence to suggest that Garaffo’s wife had any business connection with the Frost Farm project or this lawsuit and while Reznik was aware at all times that Garaffo was represented by legal counsel, Reznik addressed an insulting *31 and threatening letter purporting to be a G.Lc. 93A demand to both Mr. and Mrs. Gar-affo, and faxed the letter to their home. The defendants contend that Reznik has also made telephone calls to the Garaffo family at their home, resulting in a warning (s) by the Westwood Police,[14] and has sent “threatening” communications to other RTG and Bay Avary principals. A copy of a letter also addressed by Reznik to the home of defendants’ counsel is included in the record. Counsel further indicates that Reznik placed a telephone call to his home on New Years Eve and spoke to counsel’s wife, leaving her as “unsettled” by the bizarre intrusion as any reasonable person would be.[15] Given warnings and sanctions issued in previous cases, Reznik is deemed to know of the inexcusable impropriety of his direct contact with an opposing party represented by counsel. And circumstances should never arise to necessitate court orders prohibiting that which basic decency should instinctively prevent; namely, the more egregious conduct of contacting family members. That Reznik fully appreciates the harassing nature and effect of his actions is clear from his own statements. When Reznik, the plaintiff in this action with no office of his own and no attorney, received a single fax at his home from defendants’ counsel in reply to a fax Reznik had sent from his home, Reznik indignantly warned the defendants that the single reply fax constituted harassment, infliction of emotional distress and an invasion of his privacy [App. 368]. Reznik has aptly described the tenor of his own misconduct in this action. Therefore, the trial courts “no contact” order of March 11, 2005 is amended to prohibit Reznik’s contact not only with individual defendant Garaffo and his family members, but also the family members of defendants’ counsel. As amended, the order is affirmed. A dismissal of this action for any violation of this “no contact” order is within both the inherent authority of the trial court and the specific provisions of Mass. R. Civ. R, Rule 41(b) (2), see Reznik v. Friswell, supra, at 43.
Oddly, Reznik has included in the appendix [App. 92-93] a copy of a Superior Court order in Reznik v. Digimarc ID Systems (Sup. Ct. No. MICV 2003-02757), prohibiting him from serving any additional matters on the defendants in that case by facsimile transmission. As stated therein, facsimile transmission does not constitute service under Rule 5(b). What it can constitute, however, is a convenient and inexpensive method of harassment. Defendants’ counsel contends that Reznik continues to make “prolific use” of faxes directed to him and to others in his office. Copies of recent Reznik faxes, vulgar and childish in their groundless taunting,[16] and grossly insulting, *32 if not defamatory in content,[17] have been provided to this Division by both parties. As Reznik has perverted this everyday mode of communication into still another vehicle for the abuse of the defendants and their counsel in this action, Reznik is hereby prohibited from sending any additional facsimile transmissions to defendants’ counsel or to anyone in his office. All communications, and the service of any pleading, notice, motion, or supporting or opposing material of any kind by either party shall be accomplished by U.S. mail.
Finally, even at this initial stage of the proceedings, Reznik’s filings are already replete with sarcastic, vile and baseless attacks on the personal and professional character of Garaffo, his counsel and trial court judges, past and present. That Reznik, once again, is well aware of the impropriety of such material is beyond question. In Reznik v. Digimarc ID Systems, to which he has referred us, Reznik was repeatedly warned by the Superior Court to stop “humiliating” himself by “abusing opposing counsel, the defendants and the court” by the inclusion of “immaterial, impertinent and scandalous matters and baseless allegations of wrongdoing” in both his pleadings and communications. (Order-Feb. 9, 2004). Pursuant to Mass. R. Civ. R, Rule 12(f), the Superior Court struck several of Reznik’s offending motions and warned that further sanctions, including dismissal, would be imposed for his additional misconduct.[18] Those sanctions remain available to the trial court in this case if Reznik unwisely elects to continue abusing the privilege of conducting civil litigation.
3. Motion for Default. A default may be entered only against a party who has “failed to plead or otherwise defend.” Mass. R. Civ. E, Rule 55(a). The phrase “otherwise defend” “referís] to filings such as a motion to dismiss that defer the requirement to plead. ...” Curly Customs, Inc. v. Pioneer Financial, supra at 99. Given the defendants’ appearance in this action, their Rule 12(b)(6) motion, and their opposition to all of Reznik’s motions, there was no abuse of discretion in the trial court’s denial of Reznik’s motion to default the defendants. See Riley v. Davison Constr. Co., 381 Mass. 432, 442 (1980) (filing of counsel’s appearance and participation in discovery, even where no answer filed, warranted denial of default judgment request). Given our reversal of the allowance of their dismissal motion, the defendants may now seek an extension of time for filing an answer; and the allowance of such motion will rest within the broad discretion of the trial court.
4. Motion to Amend. Rule 15(a) permits a party to amend his pleading once as a matter of course. White v. Helmuth, 45 Mass. App. Ct. 634, 636 (1998). As noted, Reznik’s motion to amend was predicated on the false assertion that he was entitled to complaint amendment because he was seeking it for the first time. Given that assertion, there was no abuse of discretion in the denial of Reznik’s motion for a second amendment of his complaint. Reznik cannot sustain his appellate burden, Mancuso v. Kinchla, 60 Mass. App. Ct. 558, 572 (2004), of proving any abuse.
In addition to clarifying his claims, Reznik’s proposed second complaint amendment sought to add Bay Avary and Robert Yelton (“Yelton”), an officer of Bay Avary, *33 as party defendants. Although, generally, amendments are liberally allowed, Bengar v. Clark Equip. Co., 401 Mass. 554, 556 (1988), a motion to amend to add a party may be denied upon a determination of unjustified delay, bad faith or undue prejudice. Barbosa v. Hopper Feeds, Inc., 404 Mass. 228, 233 (1988). The proposed addition of Robert Yelton who, like defendant Garaffo, is a corporate officer ordinarily shielded from personal liability may indeed be predicated on bad faith; but that determination has not been conclusively made at this juncture. We take judicial notice of our own records to state that Reznik has already filed at least one other action against Yelton and Bay Avary,[19] and interests of fairness and judicial economy militate against the piecemeal litigation of Reznik’s Frost Farm claims. Further, there is the as yet unresolved question of the necessity of joining Helen Reznik as a party plaintiff. Therefore, based on these factors which were not before the trial court, we return Reznik’s motion to amend to the trial court for reconsideration together with the question of Helen Reznik’s joinder. In the circumstances of this case, the “preferable practice would be for [Reznik] ... to give the proposed new party [Yelton] notice of the motion to amend so that the new party would have the opportunity to file an opposition and request a hearing.” Srebnick v. Lo-Law Transit Mgm., Inc., 29 Mass. App. Ct. 45, 51 (1990). Any amendment of the complaint would relate back to the date of the commencement of this action. Perkins School for Blind v. Rate Setting Commission, 383 Mass. 825, 830 (1981).
5. Additional Motions. Reznik filed not one, but three successive motions, together with supporting and supplemental memoranda, for “clarification” of the order allowing the defendants’ motion for dismissal and sanctions. The motions demanded that the court’s handwritten decision be typed. The judge’s handwritten order was clear and legible[20]; and Reznik had no problem in identifying and addressing its contents in his motion to alter or amend the order, which Reznik filed after his first clarification motion, but before his second and third. There was no abuse of discretion in the consistent denials of Reznik’s repeated clarification motions.
Reznik also complains that the trial court restricted his post-dismissal filings to those pertaining to an appeal of the court’s orders. As a practical matter, as the court proceeded to rule on all of Reznik’s subsequent, often redundant motions, he can claim no actual prejudice from the court’s restriction.[21]
*34 Finally, Reznik was not entitled to any findings of fact or rulings of law upon the court’s disposition of the defendants’ Rule 12(b)(6) motion. Reznik v. Friswell, supra, at n.3.
Accordingly, the allowance of the defendants’ motions for dismissal and sanctions is vacated, and the case is returned to the trial court for further proceedings consistent with this opinion.

 Nor are a myriad of other irrelevant trial court filings by Reznik, which include, inter alia, a membership certificate in a professional organization issued 24 years ago and a 1988 letter he sent to Congressman Barney Frank.

 Reznik’s first complaint was filed on November 17, 2004. In a February 5, 2005 affidavit, Reznik admits that he filed an “amended complaint and jury demand” December 16, 2004. However, on March 2, 2005, Reznik filed a motion to again amend his complaint, falsely asserting that he was entitled to the amendment as of right because the proposed pleading attached to the motion was his first amended complaint.

 For example, NStar delayed for months in installing the electrical supply system because Frost Farm was not on a public right of way, the adjacent land had conservation restrictions, and the landowner would not reach an agreement with NStar for a right of way for service lines. The Federal EPA elected to revise the plan originally approved for the sewerage system. The corporate president of the siding subcontractor died suddenly in a traffic accident and the company was dissolved. The process for securing final approval of the condominium documents by the Land Court was protracted because the Frost Farm site leased by the Town to Bay Avary was registered land.

 Nothing in the record addresses the obvious question of why Helen Reznik, who executed both the purchase and sale agreement for the condominium unit and the upgrade sheet and who owns the Frost Farm unit with her husband, has not been made a party to this suit. Rule 19(a) of the Mass. R. Civ. P. mandates that “[a] person who is subject to service of process shall be joined as a party in the action if... (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may ... (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.” The rule applies to both plaintiffs and defendants, and compulsory joinder may be sought by the defendants or ordered sua sponte by a trial court. There is no indication that Reznik complied with Rule 19(c), which provides that “[a] pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a)(l)-(2) hereof who are not joined, and the reasons why they are not joined.”

 In a hearsay affidavit in opposition to the Rule 12(b) (6) motion, Reznik initially claimed that his sister-in-law, Margaret Golfman (“Golfman”), told him that she found the defendants’ January 31, 2005 Federal Express envelope on February 3, 2005 on the porch of her Frost Farm unit, several condominiums away from Reznik’s unit. Golfman claimed the envelope was opened and empty; not a single sheet of the 120 pages it contained was found. Later faced with documentary proof of delivery of the envelope to his own address on February 1, 2005, Reznik suggested that he returned to his unit on February 1, 2005 at 11:00 P.M.; the Federal Express package was leaning against his door; it was thrown into the snow when Reznik opened the door; “snow removal” people mishandled and delivered the envelope, addressed to Reznik, to some other Frost Farm resident the next day; the hypothetical resident opened it and “dissarayfed] its contents”; and the envelope somehow eventually reached Golfman, not “dissarayed” but empty. In this or even a third scenario, Reznik suggested that Golfman found the envelope not on her porch, but in the snow on the pathway leading to her door.
Although dated February 22, 2005 and not served on Garaffo until that time, Reznik actually filed an “Addendum” addressing each of the arguments set forth in the defendants’ lengthy Rule 12(b)(6) motion on February 8, 2005, only five days after receiving what he claims was an empty envelope from Golfman. In his brief to this Division, Reznik states that the contents of the Federal Express envelope, which he denies having seen or received, were not stapled.

 In an argument devoid of legal merit but seemingly indicative of ulterior litigation purposes, Reznik contends that because he did not serve RTG, that corporation has no “standing” to seek dismissal of this action or to respond to any of Reznik’s as yet unsupported allegations, and that Reznik is free to continue to bring additional suits in the District or Superior Court against RTG. It is elementary that a named defendant may waive service of process and voluntarily submit to the personal jurisdiction of a court. Vangel v. Martin, 45 Mass. App. Ct. 76, 79 (1998). Such waiver may be inferred where a named defendant actually participates in the proceedings, Finkel v. Natale Rota, Inc., 19 Mass. App. Ct. 55, 56 (1984), or where pleadings or motions are authorized by, and filed on behalf of, a named defendant who has not been served. See Colley v. Benson, Young & Downs Ins. Agency, Inc., 42 Mass. App. Ct. 527, 533 (1997). In joining with Garaffo in a Rule 12(b) (6) motion, RTG has clearly elected to submit itself to the court’s jurisdiction and it is entitled to do so. The final judgment rendered in this case will operate with the preclusive effect on additional lawsuits dictated by established res judicata principles. In the interim, any additional suits filed by Reznik against the present defendants arising from the Rezniks’ purchase of their Frost Farm unit filed prior to the entry of final judgment herein would be subject to dismissal pursuant to Mass. R Civ. R, Rule 12 (b) (9), on the basis of a prior pending action.

 Reznik argues that his complaint should be construed as one for “commercial bribery,” see Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 816 (1982), a claim for which recovery may be had under G.Lc. 93A Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474 (1991). However, an adequate demand letter which sufficiently identifies the nature of a plaintiffs injury or loss is a prerequisite to G.Lc. 93A, §9 relief. Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 288 (1985). While the complaint alleges that Reznik sent appropriate demand letters to the defendants, none is attached. We note that the defendants included in their Rule 12 (b) (6) motion a copy of a G.Lc. 93A demand letter sent by Reznik to Garaffo’s home and addressed to both Gar-affo and his wife (see discussion, infra). That demand letter Med to make any reference to the claims set forth in Reznik’s complaint Moreover, it was sent by facsimile transmission (“fax”) and thus was not properly served. See Rule 5 (b).

 The defendants indicate that Reznik violated G.L.c. 231, §13B by including an unverified statement in his complaint of the dollar value of the damages he claims. The expungement from the complaint of material included in violation of that statute may be ordered by a trial court, and violation of that order(s) could warrant the dismissal of a complaint See Friedman v. Globe Newspaper Co., 38 Mass. App. Ct. 923 (1995).

 Given our ruling, it is unnecessary to address Reznik’s motion to alter or amend judgment.

 In vacating a Mass. R. Civ. R, Rule 11, dismissal in U.S. Funding, Inc., the Appeals Court stated: “Dismissal was ordered in this case ... before the filing of any answer or other responsive pleading and in the absence of affidavits, depositions, answers to interrogatories or testimony. The result is a record devoid of a factual basis for concluding that the plaintiff’s claim is either frivolous or improperly motivated.” Id.

 The defendants contend that Reznik threatened to force RTG into court at least three times a month. The record includes a Reznik e-mail to a reporter in which Reznik boasts of the legal advice, document drafting and oral argument before the trial court that he undertook on behalf of another Frost Farm resident, Susan Jackson (“Jackson”), who filed five separate small claims against Garaffo, individually. Jackson did not prevail on her claims, but Reznik expressed his satisfaction with the fact that Garaffo was required to pay $15,000.00 in legal fees to establish that he was not individually liable. The Attorney General’s Office issued two cease and desist orders to end Reznik’s attempts to practice law without a license. That Office was soon forced to restrict Reznik to written communications based on what it indicated was his misrepresentation of the contents of their telephone conversations.

 He repeats his admissions in filings in this case. [App. 134,135]

 The Garaffo family was also targeted in an anonymous “ransom style” note sent to their daughter at the family home on the eve of her wedding. The note, included in the record, stated: ‘We pay for the wedding. We come.” Reznik denies responsibility.

 Reznik has admitted making the call and speaking to Mrs. Wall.

 For example, on the day before oral argument in this case, Reznik faxed the following unprovoked insult to defendants’ counsel through another attorney in his office: “Looking forward to seeing you at the hearing I am so certain that you will be sober without shaking hands thus eliminating any suspicions of your soberness.” The alcohol theme is a moronic fabrication apparently first concocted by Reznik in an opposition to defendants’ request for attorney’s fees. Noting that the fees included travel time, Reznik fantasized that defendants’ counsel had spent that time “by drinking beer and sitting in restrooms” and should not be compensated for the “fun that he gets in restrooms or while driving a car.” [App. 239]. Enlisting the assistance of his wife, Helen Reznik, in perpetuating the sophomoric fantasy, Reznik actually filed a later statement to this Division for the purpose of expressing Mrs. Reznik’s personal opinion that defendants’ counsel had an alcoholic beverage prior to the first oral argument in this case. The descending depths of siich intractably ugly and pointless misbehavior are unfathomable.

 A few days later, Reznik faxed to the same attorney in defendants’ counsel’s office what was captioned as a reply to the defendants’ opposition to another of Reznik’s motions, in which, inter alia, Reznik this time labeled defendants’ counsel a “swindler.” Reznik’s cover sheet stated: “A shoplifter is a professional thief who makes living by stealing. His distinction from a regular thief is that he thinks that nobody sees while he steals. For that reason he prefers to steal from those who, in his view, cannot catch him red-handed.”

 After only eleven months of pretrial litigation, during which Reznik filed over one hundred motions, memoranda and other materials, a Mass. R. Civ. E, Rule 41 (b) (2), judgment of dismissal was entered upon Reznik’s refusal to participate in a pretrial conference.

 Mark Reznik v. Robert H. Yelton, Individually and as President of Bay Avary Associates, LLC and Trustee of the Frost Farm Leasehold Condominium Trust, and Bay Avary Associates, LLC, Natick District Court No. 0587-CY-185. Upon motion by any of the parties to the Natick action or the one at bar, the cases could be consolidated for trial pursuant to Mass. R. Civ. R, Rule 42 (a).

 Even the photocopy of Reznik’s photocopy included in the appendix is legible and clearly states: ‘The action in question for the reasons in the record fails to state a claim against the defendants and is frivolous (i.e., and/or any of Mr. Gar-affo’s family members. No contact means directly, indirectly, orally, in writing or electronically. Other than accepting a timely filed claim of appeal pertaining to this decision, the Office of the Clerk-Magistrate is ordered not to accept any further filings from the plaintiff in regard to his prosecution of this case.” The order further states: “Plaintiff has five months to pay the $4,777.00. Payments will be on or before the first of each month, will be in the amount of $1,000 except the last payment, which will be $777.00. Payments are to begin on April 1,2005.”

 For orders prohibiting further filings, see, e.g., Russell v. Nichols, 434 Mass. 1015 (2001); Camoscio v. Board of Registration in Podiatry, 408 Mass. 1001, 1002 (1990). See also Kurker v. Kassler, 60 Mass. App. Ct. 1122 (2004) (Unpub.); Mozek v. City of Revere, 60 Mass. App. Ct. 1124 (2004) (Unpub.).