Curtin, J.
Defendant Eugene Reznik (“Reznik”) has appealed the entry of a default judgment and other sanctions imposed by the trial court for his repeated and intentional violation of court orders.
There was no error.
The Jillson Company, Inc. (“Jillson”) filed a small claims action against Reznik after he ignored repeated demands to pay $1,545.00 for the surveying work performed by Jillson at Reznik’s house in Weston pursuant to the parties’ written contract. After the trial court allowed his motion to transfer the action to the regular civil docket, Reznik counterclaimed for $3,000.00 in damages for what he alleged was Jillson’s noncompliance with the contract. In March, 2006, Jillson answered by asserting several affirmative defenses to Reznik’s counterclaim.
On April 12, 2006, Jillson issued written notice to Reznik that it would take his deposition on May 9,2006. However, without any notice to Jillson or excuse of any kind, Reznik simply failed to appear on May 9th. Jillson was forced to file a motion to compel Reznik’s deposition, which was allowed on May 18, 2006. The motion judge expressly “ordered [Reznik] to appear upon written notice at the next date set for his deposition.”[1] Consistent with the court’s order, Jillson served Reznik with a notice of a second scheduling of the deposition on June 13, 2006. Ignoring the court’s May 18, 2006 order, Reznik filed a “motion to continue deposition” on the ground that “his business required] him to be out of town on the day of the [June 13,2006] deposition.” After a hearing on June 6,2006, which Jillson did not attend, the motion judge allowed Reznik’s continuance motion. Jillson did not attend the motion hearing because Reznik failed to serve Jillson with a copy of the motion or to provide it with any other notice of the hearing. Based on Reznik’s *64 conduct in violation of the rules of civil procedure, Jillson filed a complaint for contempt against Reznik on June 16, 2006.[2]
In the meantime, Reznik sent notice that he would depose Jillson on June 15,2006. On June 9th, six days prior to the scheduled deposition, Reznik sent an e-mail to Kevin O’Leary (“O’Leary”), Jillson’s president, informing O’Leary that he intended to take several depositions of Jillson employees that would result in “high financial costs” for Jillson; that he would be compelled to file an appeal if he lost, which would cost Jillson over “10K” in legal fees; and that O’Leary should contact him before the June 15th deposition.
O’Leary ignored Reznik’s improper overture to him,[3] and appeared for his June 15,2006 deposition. Improperly assuming the role of an attorney, Reznik opened the proceeding by advising O’Leary that
it is the Jillson Company and not the attorney, Mr. Meltzer, that is responsible for the answers to the questions that will be asked here or the lack thereof. So if there is an objection raised by the Jillson Company’s attorney to a question and you choose not to answer it and that objection is later overruled by the courts, that will be grounds for retaking of the deposition and I will seek the costs of retaking such a deposition.
Jillson’s counsel, Attorney Robert N. Meltzer (“Meltzer”), objected and moved to strike, warning Reznik that “[y]ou will not be giving advice to a client. You are not an attorney.” Reznik responded with the following non sequitur: “Mr. Meltzer, you may not hint the answers to the questions.” When O’Leary was finally sworn, Reznik’s first question was whether he understood Reznik’s advice. O’Leary replied that he did not. Reznik then asked whether O’Leary understood that Meltzer could not interrupt Reznik’s questions. Before O’Leary could answer, Meltzer suspended the deposition to seek a protective order.
The next day, Jillson filed a Mass. R. Civ. R, Rule 26, motion for a protective order requiring Reznik either to retain legal counsel for the purpose of taking depositions, or to conduct his depositions under court supervision. Reznik filed an opposition and a hearing was held. The motion judge issued a written decision on July 17, 2006. First, he ordered that all discovery be terminated, finding that “ [i] t is obvious that the parties cannot work together to complete discovery. D [efendant] is the main culprit. Any attempt to continue discovery would be fruitless.” Second, acknowledging that the subject matter of the suit was straightforward, the judge ordered the case to proceed directly to trial. However, in the interests of limiting any surprise to the parties at trial and controlling the cost of litigation, which he noted was the original purpose of the small claims statute, the judge ordered both parties to submit to the court and to each other within thirty days a list of the witnesses they planned to call at trial.
*65 Instead of complying with the courfs July 17,2006 order, Reznik filed a motion for reconsideration, a motion for final disposition of the case on summary judgment, and a “Memorandum of Non Attendance.”[4] Jillson responded with a motion for sanctions. At the September 29,2006 motion hearing, which Reznik chose not to attend, the court denied Reznik’s summary judgment motion and allowed Jillson’s motion for sanctions. As to the latter, the judge ruled: “[Reznik] was ordered not to file additional motions so as to cause even greater expense, which has been [Reznik’s] intent all along. Further, [Reznik] did not comply with the court’s July 17, 2006 order [i.e., filing and service of witness list].” Accordingly, the judge sanctioned Reznik (1) by ordering him to pay $562.00 in attorney’s fees within ten days, and (2) by ruling that he “forfeit[ed] his counterclaim.” The judge also expressly and clearly warned that he would enter judgment against Reznik on Jillson’s breach-of-contract claim “if [Reznik] doesn’t pay the counsel fee or comply with the July 17,2006 order in 10 days.”
Reznik elected, unwisely, to continue flouting the court’s orders. On October 20, 2006, Jillson moved for the entry of a default judgment on its breach-of-contract claim against Reznik, and Reznik filed an opposition and a motion for a stay and sanctions. The court allowed Jillson’s motion on October 26,2006, stating: “Defendant is barred from filing any more motions in this Court. Def [endant] has been chronically contemptuous of all prior court orders.... Default judgment is ordered for Plaintiff] in the sum certain recited [of $1,545.00] plus $562.00 in sanctions not paid by Def [endant].” Reznik filed this appeal.
1. Discovery. Reznik initially argues, unpersuasively, that the trial court erred in terminating discovery. “Decisions on the scope of discovery are committed to the sound discretion of the trial judge.” Adoption of Paula, 420 Mass. 716, 734 (1995). An appellate court will not reverse a trial judge’s decision on discovery matters absent “prejudicial error resulting from an abuse of discretion.” Solimene v. B. Grauel & Co., KG, 399 Mass. 790, 799 (1987). What constitutes an “abuse of discretion” will vary in different contexts. Wojcik v. Boston Herald, Inc., 60 Mass. App. Ct. 510, 513 (2004), citing Long v. Wickett, 50 Mass. App. Ct. 380, 386 n.8 (2000). The motion judge’s discretion in this case was bounded, on one side, by his authority and experience, and his responsibility, in directing discovery. See Beninati v. Beninati, 18 Mass. App. Ct. 529, 534 (1984) (“The judge is not without experience and his management of the discovery issues is entitled *66 to weight”). On the other side of the equation was the parties’ interest in obtaining information to prepare their cases for trial. See GTE Products Corp. v. Stewart, 414 Mass. 721, 725 (1993), quoting 8 CA Wright & AR Miller, Federal Practice & Procedure §2001, at 17-19 (1970) (“The purposes for which the discovery rules exist are to... enable a party to obtain the information needed to prepare for trial. In this way, it was sought to put an end to the ‘sporting theory of justice,’ by which the result depends on the fortuitous availability of evidence or the skill and strategy of counsel.”).
Based on a consideration of these interests in the circumstances of this case, we conclude that the trial court’s termination of discovery to alleviate an untenable^ unproductive, and costly pretrial situation created, to some extent, by both sides[5] was a proper exercise of judicial discretion. The judge’s discovery order not only removed the parties from a “fruitless” process, but was also intended, as he explained, “to limit the cost of litigation, the original purpose of the small claims statute.” At this point in the case, Reznik had failed to attend his second scheduled deposition and had moved to continue a compelled third date. Meltzer, for his part, had suspended O’Leary’s deposition, and had filed a motion for a protective order and complaint for contempt. The motion judge had a copy of Reznik’s e-mail to O’Leary in which Reznik noted the heavy costs already paid by both parties, expressed his determination to conduct further depositions and later file an appeal, and even improperly questioned the integrity of O’Leary’s counsel. The circumstances in this case were similar to those in Beninati, supra, a divorce case in which an avalanche of motions and opposition motions ultimately led the trial judge to end discovery and commence an immediate trial. As to the judge’s termination of discovery, the Appeals Court held: “ [W] e are firmly of opinion that the judge did not abuse his discretion. He did not act arbitrarily or whimsically. His mind was very much at work. He saw the discovery controversy as posturing for bargaining purposes and a morass from which trial might extricate the parties.” Id. at 534. Similarly, in this case, the motion judge may be seen as having exercised his discretion to extricate Reznik and Jillson from a costly and unproductive discovery “morass.”
While it would appear that both parties would have pursued discovery, the motion judge also correctly concluded that this breach-of-contract case was not a complex one requiring extensive pretrial investigation. The judge noted that “[fjortunately, the subject matter is relatively straightforward so each side should have some sense of what the other side intends to prove.” The court’s order that the parties file and serve a list of the witnesses they planned to call, “with a paragraph description of said expected testimony and, any opinion testimony any witness intends to render,” served as an adequate safeguard against any unfair surprise at trial, and afforded the parties a reasonable, albeit modest, basis for trial preparation.
In short, in view of the parties’ history, the simple nature of the case, and the court’s order requiring the exchange of witness lists with a summary of expected *67 testimony, the court’s termination of discovery did not constitute an abuse of discretion amounting to a reversible error of law.
2. Sanctions. Judges have the inherent, authority “to do what is necessary to achieve the ‘orderly and expeditious disposition of cases,’ Anderson v. Sport Lounge, Inc., 27 Mass. App. Ct. 1208, 1209 (1989), and to ‘secure the administration of justice.’ Avelino-Wright v. Wright, 51 Mass. App. Ct. 1, 5 (2001).” Reznik v. Friswell, supra at 43. Among a judge’s inherent powers is the authority to sanction a party for disobedience of a court order. See Beit v. Probate & Family Court Dep’t, 385 Mass. 854, 859 (1982); Avelino-Wright, supra at 5; Brothers v. Lipp, 2004 Mass. App. Div. 21, 28. This authority predates the enactment of the Rules of Civil Procedure. Friedman v. Globe Newspaper Co., 38 Mass. App. Ct. 923, 924 (1995), citing Nickerson v. Glines, 220 Mass. 333, 336 (1915) (“If the court does not possess the power to enforce its just order... it would be impotent in the face of a recalcitrant party.”).
In determining whether a court has abused its discretion in imposing sanctions for disobedience of a court order, Massachusetts courts have addressed two considerations. First, a judge may not use his “inherent power” to avoid the requirements of due process. Beit, supra at 861. Sanctions may not be imposed, therefore, without fair notice and an opportunity to be heard. Id:, Avelino-Wright, supra at 5. Second, when “a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not exhaust milder sanctions before resorting to dismissal.” Brothers, supra at 28, quoting Friedman, supra at 924.
Jillson’s motion for sanctions against Reznik obviously put Reznik on notice of the possibility that sanctions could be imposed on him at the hearing of that motion on September 29, 2006. Despite this obvious threat of sanctions, as well as the fate of his own motion for summary judgment that was scheduled for hearing on the same date, Reznik simply chose not to appear at the hearing. Reznik’s deliberate absence from the hearing does not alter the fact that he was provided with an opportunity to be heard.
Further, before the judge imposed the ultimate sanction of dismissal, Reznik had “manifested a disregard for orders of the court.” Friedman, supra at 924. For example, despite the cour f s order compelling Reznik “to appear upon written notice at the next date set for his deposition,” Reznik moved to continue the compelled third date. Moreover, he failed to comply with the court’s July 17th order for both sides to provide a witness list with a summary of testimony by August 17, 2006. Thus, the trial court did not abuse its discretion is dismissing Reznik’s counterclaim.
Similarly, prior to its October 26,2006 entry of a default judgment against Reznik on Jillson’s complaint, the court not only dismissed Reznik’s counterclaim on September 29, 2006, but also warned him that judgment would be entered in favor of Jillson if Reznik failed to pay the attorney’s-fee sanction and to comply with the July 17, 2006 order within 10 days. The September 29, 2006 ruling served not only as suitable forewarning of the consequences of Reznik’s continued disregard of the courfs orders, but also as notice of the potential for the additional sanction of a default judgment. The court properly exercised its authority to sanction Reznik’s continued contemptuous disobedience of the prior court orders and did not abuse its discretion in entering a default judgment against him on Jillson’s complaint. See Brothers, supra at 28.
*68 Appeal dismissed. Pursuant to Dist./Mun. Cts. R. A. D. A., Rule 26, the full costs of this appeal shall be taxed against the defendant-appellant, Eugene Reznik. The trial court clerk shall calculate the amount of such Rule 26 costs upon Jillson’s filing of the documentation required by Rule 26 (c), and shall include the amount of those costs in the judgment entered against Reznik and in favor of Jillson.
So ordered.

 It was clear, however, that Reznik never intended to appear and to submit to questioning under oath at any deposition. He stated in his opposition to Jillson’s motion to compel that “[a] decision in favor of Jillson will be considered as Null and Void thus excluding any appearance at the deposition.” This statement also serves as clear notice that Reznik had no intention of recognizing or obeying trial court orders.

 The record does not indicate that the court took any action on this complaint.

 See, as to impropriety of opposing party directly contacting party represented by counsel, Reznik v. Garaffo, 2006 Mass. App. Div. 25, 30-31 and Reznik v. Friswell, 2003 Mass. App. Div. 42.

 Reznik based this peculiar document on the assertion that he filed his summary judgment motion “subject to [the] opposition procedure” that renders unnecessary hearings and arguments on certain uncontested motions. However, the “opposition procedure” applies only “ [i]n actions where all parties are represented by counsel.” Dist. Ct. Joint Standing Order 1-04, §VI(D). Reznik proceeded pro se in this action. Reznik, an adult, did file a frivolous motion to be represented by his father, Mark Reznik, which the trial court properly denied. Mark Reznik is not an attorney or a member of the bar and cannot practice law. G.L.c. 221, §46A. “Plainly the commencement and prosecution for another of legal proceedings in court, and the advocacy for another of a cause before a court... are reserved exclusively for members of the bar.” Las Collection Mgt. v. Pagan, 447 Mass. 847, 849-850 (2006), quoting Lowell Bar Ass’n v. Loeb, 315 Mass. 176, 183 (1943). See, as to results of apparent attempts by Mark Reznik to practice law without a license, Reznik v. Garaffo, supra at 30 n.12.

 Although Reznik obviously was, as the trial court concluded, the “main culprit,” the court noted that Attorney Meltzer was not totally blameless. In addressing Meltzer on his termination of O’Leary’s deposition, the motion judge commented that “[njotwithstanding [Reznik’s] bad conduct, it sounds like you might have had a short fuse.”